**Salem**

TIMOTHY LYNN SCAGGS

v.

COMMONWEALTH OF VIRGINIA

No. 0192-86

Decided September 1, 1987

COUNSEL

Emanuel Clabon Edwards, for appellant.

Leah A. Darron, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.** — Timothy Lynn Scaggs was convicted by a jury of one count of robbery and use of a firearm in the commission of robbery, three counts of abduction, and three counts of use of a firearm in the commission of abduction (second or subsequent offense). Scaggs raises two issues on appeal: (1) whether the trial court erred by admitting into evidence an accomplice's out-of-court statement which incriminated the accomplice; and (2) whether it was proper to convict the defendant of "second or subsequent" uses of a firearm in the commission of crimes which oc-

curred during the same sequence of events. Finding no reversible error, we affirm the convictions.

On March 2, 1985, at approximately 2:15 a.m., two men dressed in dark clothes and wearing gloves and panty hose masks approached Sharon Kelly, Lloyd Bishop, and William Hartless, all employees of the Pizza Hut on Brandon Avenue in the City of Roanoke, as they were closing the restaurant and preparing to leave. Kelly and Bishop were ordered at gun point to crouch on the floor. Hartless panicked, ran to the back of the restaurant and urinated in his pants. He was apprehended by one of the robbers and returned to the area where the two other employees were restrained. The robbers took the bank deposit bag containing approximately $600 and Kelly's purse containing approximately forty dollars. The three employees were then forced at gun point into a walk-in refrigerator in the back of the restaurant.

Over the next few minutes Kelly was led from the refrigerator several times and ordered at gun point to open the restaurant safe. She was unable to open the safe due to her fear under the circumstances. During one of the times Kelly was removed from the refrigerator, one of the robbers, whom she later identified as Scaggs, failed to pull down his mask and she was able to see his face. Both Kelly and Bishop identified Commonwealth's exhibit 13 as a gun looking "similar" to the silver handgun carried by this robber.

Over the objection of Scaggs, Tina Anderson testified that her boyfriend, Joey Goad, had come to her home on March 2, 1985, at 3:10 a.m. with a large sum of money. Anderson testified that Goad had no money the evening before and that he gave her $300 to $400 and told her that he had participated in the robbery of the Brandon Avenue Pizza Hut. Based on her conversation with Goad, Anderson recovered a silver handgun in her extra bedroom which was identified as Commonwealth's exhibit 13 at trial. Anderson also testified that Goad and Scaggs had come to her home the day before the robbery. Goad was not called as a witness by either the Commonwealth or Scaggs.

Toby Shannon, a fellow inmate with Scaggs, testified that Scaggs had discussed this robbery with him and had admitted that he and Goad committed the robbery. He further testified that Scaggs recounted the incident during the robbery where one of the Pizza Hut employees had attempted to run away and had uri-

nated in his pants.

## I.

## The Admissibility of the Accomplice's Out-of-Court Statement.

At trial and in this appeal, Scaggs objected to Tina Anderson's testimony that Joey Goad admitted to her that he participated in the Pizza Hut robbery because Goad's statement was hearsay. On appeal he further asserts that because Anderson testified that (1) Scaggs and Goad were associated and (2) Goad admitted his participation in the crime that this created an "impression of guilt by association" for the jury. Scaggs maintains that the impression of guilt by association was prejudicial to him as evidenced by the fact that during deliberations the court received an inquiry from the jury which read: "Why wasn't Joey Goad called?" The court responded:

> There are all sorts of reasons why either side may not have wanted to call him. He could have been available presumably for either side to call. There is the possibility of a fifth amendment claim, a privilege against self-incrimination, there are all sorts of things or reasons why either the Commonwealth or the defendant for tactical reasons didn't feel that they wanted to call him. He was not called, and to repeat you are not to conjure up what you think he might have said or why one side didn't call him or not.

The Commonwealth correctly concedes that a co-conspirator's statements made in the defendant's absence after the termination of the conspiracy are inadmissible in evidence at the defendant's trial because such statements are hearsay. The Commonwealth, however, argues that Goad's admission was properly admitted into evidence as a third-party declaration against penal interest, a recognized exception to the hearsay rule.

In *Morris v. Commonwealth*, 229 Va. 145, 326 S.E.2d 693 (1985), our Supreme Court stated the rule and its application as follows:

> [I]t is settled in Virginia that, while a declaration against penal interest is recognized as an exception to the hearsay

rule, such a declaration made out of court by a dead or *otherwise unavailable witness* is admissible only upon a showing that the declaration is reliable. We make no attempt here to delineate the quality or quantity of evidence necessary to establish reliability; the question must be left to the sound discretion of the trial court, to be determined upon the facts and circumstances of each case. But, in any case, once it is established that a third-party confession has been made, the crucial issue is whether the *content* of the confession is trustworthy. And determination of this issue turns upon whether, in the words of *Hines* [*v. Commonwealth*, 136 Va. 728, 748, 117 S.E. 843, 849 (1923)], the case is one where "there is anything substantial other than the bare confession to connect the declarant with the crime."

*Id.* at 147, 326 S.E.2d at 694 (quoting *Ellison v. Commonwealth*, 219 Va. 404, 408-09, 247 S.E.2d 685, 688 (1978))(emphasis added).

■ We are satisfied from our review of the record that Goad's statement to Anderson was against his penal interest and that it was reliable and trustworthy. In this case, however, the proper application of the rule turns on the unavailability of Goad as a witness. The Commonwealth relies on *Newberry v. Commonwealth*, 191 Va. 445, 461, 61 S.E.2d 318, 326 (1950), for its position that Goad was "unavailable" as a witness because he could not be compelled to testify as his testimony would incriminate him. This reliance is misplaced. In *Newberry*, the witness was in fact sworn as a witness and he took the witness stand, then refused to testify on the ground that he could not be compelled to do so. In the instant case the Commonwealth, upon which the burden lay to show unavailability, did not call Goad as a witness and on appeal simply asserts by way of assumption that Goad would not have testified. The trial court presumed that Goad was available and possibly would refuse to testify or that the Commonwealth did not call him for some tactical reason. This was error. Without establishing that Goad was unavailable as a witness, his statments to Anderson were hearsay and the third-party declaration against penal interest exception was not applicable.

We hold, however, that this error was harmless and does not warrant a reversal of Scaggs' conviction.

■ It is well settled that "error in a criminal case will require reversal of a conviction unless the error is harmless beyond a reasonable doubt." *Jones v. Commonwealth*, 218 Va. 732, 737, 240 S.E.2d 526, 529 (1978); *see Goins v. Commonwealth*, 218 Va. 285, 288, 237 S.E.2d 136, 138 (1977); *Vass v. Commonwealth*, 214 Va. 740, 745, 204 S.E.2d 280, 284 (1974).

Our review of the whole record convinces us that it is clear beyond a reasonable doubt that without the evidence of Goad's statements to Anderson the jury would have returned a verdict of guilty against Scaggs because the other evidence of Scaggs' guilt was overwhelming. Sharon Kelly had the opportunity during the robbery to see Scaggs with the face mask removed and her identification of him was positive. Toby Shannon testified that Scaggs admitted to him that he participated in the robbery and described facts concerning the robbery that Scaggs would not have known but for his participation in the crime. Accordingly, we hold that the error was harmless and does not warrant a reversal of Scaggs' conviction.

## II.

Conviction of "Second or Subsequent" Uses of a Firearm.

Scaggs was charged and convicted of robbery and use of a firearm in the commission of robbery in violation of Virginia Code § 18.2-53.1. He was also charged with and convicted of three counts of abduction and three corresponding counts of use of a firearm while committing abduction. He was sentenced to enhanced punishment on these three firearm convictions. All of these convictions arose out of the Pizza Hut robbery on March 2, 1985.

■ On appeal, Scaggs argues that the Commonwealth did not prove that he had a prior felony conviction and accordingly he could not properly be convicted and sentenced to an enhanced punishment under Code § 18.2-53.1 for use of a firearm, second or subsequent offense. He contends that the convictions of robbery or the three abductions could not be used for this purpose. Scaggs' argument is without merit. " 'The statute addresses itself not to the act or incident, but to the offenses committed with a firearm and the *convictions* that result therefrom. . . . Where several convictions result from the same act, each conviction is separate and distinct from the other.' " *Morris v. Commonwealth*, 228 Va. 206,

211, 321 S.E.2d 633, 636 (1984)(quoting *Flythe v. Commonwealth*, 221 Va. 832, 275 S.E.2d 582 (1981))(emphasis added).

Scaggs was convicted of robbery, the use of a firearm in the commission of robbery, and three counts of abduction. The three counts of use of a firearm in the commission of abduction were clearly second or subsequent convictions.

For these reasons, the judgment of the trial court is affirmed.

*Affirmed.*

Keenan, J., and Moon, J., concurred.