**Alexandria**

ANTHONY TYRONE BONEY

v.

COMMONWEALTH OF VIRGINIA

No. 2284-91-4

Decided June 29, 1993

COUNSEL

E. William Chapman (Hazel & Thomas; Alexander N. Levay, Public Defender, on brief), for appellant.

Thomas C. Daniel, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BENTON, J.**—Anthony Tyrone Boney was convicted by a jury of first degree murder, attempted robbery, use of a firearm in the attempted robbery, and conspiracy to rob. On appeal, Boney contends that the trial judge erred in (1) refusing to order a co-defendant to testify, notwithstanding the co-defendant's invocation of the Fifth Amendment privilege to remain silent; (2) failing to admit into evidence the statement and confession of the co-defendant after the co-defendant invoked the Fifth Amendment privilege to remain silent; (3) the granting and refusing of various jury instructions; and (4) refusing to grant a new trial because of the Commonwealth's failure to provide exculpatory evidence. For the reasons that follow, we reverse the convictions.

## I.

The evidence proved that on the night of February 1, 1991, Anthony Tyrone Boney attended a party in Loudoun County at the residence of Theodore R. Strange, III. Boney arrived at 10:30 p.m. with his brother Gregory Boney, Derrick Draughorne, Sammy Cerabolo, and Kenneth Slater. While the party was in progress, Boney and his friends engaged in a verbal dispute with Brian Denby after a female guest accused Denby of touching her. Denby said one of the men, whom he did not identify, threatened to kill him. After the altercation, Boney and his friends left the party and returned to Arlington. They obtained three sawed off shotguns and a pistol and returned to the party two hours later.

According to Slater, who testified for the Commonwealth, they obtained the weapons because they were outnumbered by the individuals who had confronted them at the party and "they were going to take [the weapons] . . . just in case." When they returned to the party, the individuals involved in the initial confrontation with Boney and his friends were gone. Slater testified that as the party continued, he and several of the individuals in the group discussed a plan to rob two men they saw at the party. Slater could not identify who in the group was involved in the discussion.

Slater further testified that as the party was ending, his group left the house. Slater said that everyone except Cerabolo took a weapon from the automobiles while the two automobiles were positioned to facilitate a getaway. Furthermore, Slater said Boney and Draughorne confronted Andre Trammel and his companions when they came out of the house. Slater testified that Trammel and his companions were ordered to lie down and put their hands up. According to Slater, Trammel said that "he didn't want any trouble." Slater also testified that Trammel's companions held their hands in the air and complied. Slater stated that when he came from his hiding place in the shadow of the pine tree to assist Boney and Draughorne, Draughorne shot Trammel in the back of his head. He said the shooting should not have happened but that after the first shot other shots were fired. Slater admitted that he was armed and that he fired his gun four times. Slater and his friends then fled.

John Brown testified that he was leaving the party with Trammel. As they walked down the driveway together, Brown and Trammel met

a heavy set man. Brown heard someone say, "what's up." He testified that the man then displayed a shotgun. Brown testified that as he turned to run away he heard a gunshot. Brown stated that no one made any statements concerning a robbery. He heard no one ask for money. He also did not hear anyone tell them to lie down or put their hands in the air.

A police officer testified that after the incident Boney gave a statement in which he said they took the guns back to the party because of an altercation. He said that according to Boney, Slater made the comment about committing a robbery. Boney also told the officer that he did not agree to a robbery but "was there." Boney also identified Slater as the person who shot Trammel.

Boney's brother was called as a defense witness. He acknowledged that several days after the incident he gave the police a statement, but he invoked his Fifth Amendment right not to incriminate himself and refused to testify. The trial judge denied Boney's motion to direct the witness to testify. At the conclusion of the evidence, Boney was convicted of murder, attempted robbery, use of a firearm in the attempted robbery, and conspiracy to rob.

## II.

Boney contends that the trial judge erred in refusing to order the witness, who was also charged and awaiting trial, to testify in Boney's trial, notwithstanding that the witness had invoked his Fifth Amendment privilege to remain silent. Boney argues that the immunity granted under Code § 19.2-270 is "co-extensive with the constitutional right against self-incrimination" and that the trial judge's refusal to order the witness to testify contravenes Code § 19.2-270.

Code § 19.2-270 reads:

In a criminal prosecution, other than for perjury, or in an action on a penal statute, evidence shall not be given against the accused of any statement made by him as a witness upon a legal examination, in a criminal or civil action, unless such statement was made when examined as a witness in his own behalf.

At the time of Boney's trial, the witness was in custody on charges arising out of the same incident for which Boney was undergoing prosecution. Thus, had the witness testified, he would have been "examined as a witness in his own behalf" because he and Boney had a

"joint interest" in the events that were the focus of the litigation. *See Hansel v. Commonwealth*, 118 Va. 803, 809, 88 S.E. 166, 167 (1916).

■ Consequently, the witness would not have been entitled to any protection under the statute. Moreover, Code § 19.2-270 "by its terms, confers only use immunity." *Gosling v. Commonwealth*, 14 Va. App. 158, 164, 415 S.E.2d 870, 873 (1992). This Court has recognized that "[u]se immunity protects the witness only from 'the use of the specific testimony compelled . . . under the grant of immunity,' but not from evidence obtained as a result of such testimony." *Id.* (quoting *Kastigar v. United States*, 406 U.S. 441, 450 (1972)). Indeed, in *Gosling*, this Court observed:

> A prosecutor, "without using one word of that statement," might "be led by the testimony of the witness to means and sources of information which might result in" self incrimination. Such limited protection is obviously not co-extensive with the constitutional privilege [to invoke the Fifth Amendment] and cannot overcome it, once validly asserted.

*Id.* at 164-65, 415 S.E.2d at 873 (citation omitted).

Thus, if the witness had testified, the prosecution would not have been foreclosed from using evidence resulting from his testimony in its prosecution against him. *Id.* In addition, if the witness had testified before the jury in Boney's trial contrary to the statement he had previously made to the police officers or contrary to the statements he made in his own subsequent trial, this sworn testimony could have been used as evidence in a future prosecution against him for perjury. *See Johnson v. Riddle*, 222 Va. 428, 432, 281 S.E.2d 843, 846 (1981). "The provisions of Code § 19.1-267 afforded [the witness] no protection under such circumstances." *Id.*

■ Furthermore, Code § 19.2-270 did not supplant the witness's constitutional privilege to invoke the protection of the Fifth Amendment. "Testimony may be compelled only 'where immunity is complete and there is no possibility of prosecution.'" *Gosling*, 14 Va. App. at 163-64, 415 S.E.2d at 873 (quoting Charles E. Friend, *The Law of Evidence in Virginia* § 69 (3d ed. 1988)). Having validly invoked his Fifth Amendment privilege, the witness was entitled to the protection of the privilege because "he was confronted by 'substantial

and "real," and not merely trifling or imaginary, hazards of incrimination.' " *Johnson*, 222 Va. at 432, 281 S.E.2d at 846 (citations omitted). Thus, the trial judge correctly ruled that Code § 19.2-270 did not provide an absolute grant of immunity and properly denied Boney's motion to compel the witness to testify.

## III.

After the witness invoked his Fifth Amendment privilege to remain silent and the trial judge denied Boney's motion to order him to testify, Boney moved to introduce the witness's out of court statement into evidence. Ruling that the out of court statement did not contain any statements inculpating the witness, the trial judge refused to admit the statement as an exception to the hearsay rule.

■ A third party confession is admissible as an exception to the hearsay rule if the following prerequisites are met:

1. The declarant must be unavailable.

2. The statement must have been against the declarant's interest at the time the declaration was made.

3. The declarant must have been aware at the time the statement was made that it was against his interest to make it.

Friend, *supra*, § 234; *see also Morris v. Commonwealth*, 229 Va. 145, 147, 326 S.E.2d 693, 694 (1985); *Eppes v. Eppes*, 169 Va. 778, 824, 195 S.E. 694, 711 (1938); *Hines v. Commonwealth*, 136 Va. 728, 744, 117 S.E. 843, 847 (1923).

■ The law is firmly established in Virginia that a declarant is unavailable if the declarant invokes the Fifth Amendment privilege to remain silent. *Newberry v. Commonwealth*, 191 Va. 445, 462, 61 S.E.2d 318, 326 (1950). Therefore, in the case at bar, the declarant was "unavailable" as a witness because he invoked his Fifth Amendment right.

■ A declaration against penal interest is recognized as a statement against the declarant's interest. *See Scaggs v. Commonwealth*, 5 Va. App. 1, 5, 359 S.E.2d 830, 832 (1987). A statement is against the declarant's penal interest if it subjects the declarant to criminal liability. *United States v. Sarmiento-Perez*, 633 F.2d 1092, 1101 (5th Cir. 1981), *cert. denied*, 459 U.S. 834 (1982). In making that determination, we must "look at the practical significance of statements made

by a witness . . . and determine, given all of the circumstances,'' whether the statement subjected the witness to criminal liability. *Witham v. Mabry*, 596 F.2d 293, 297 (8th Cir. 1979). The statement, read as a whole, was against the witness's penal interest because the portions of the statement relating events both during and after the offense implicated the witness at least as an accessory to the incident. By admitting that he was aware of the shooting and subsequently helped to conceal the murder weapon, the witness potentially subjected himself to criminal liability. In addition, the statement established that the witness knew that by making a truthful statement, he subjected himself to criminal liability.

■ ''[I]t is settled in Virginia that, while a declaration against penal interest is recognized as an exception to the hearsay rule, such a declaration made out of court . . . is admissible . . . upon a showing that the declaration is reliable.'' *Morris*, 229 Va. at 147, 326 S.E.2d at 694. The trial judge found that the witness's ''statement does have an indicia of reliability about it because it's corroborated by the evidence in this case.'' Thus, we conclude that the trial judge's refusal to admit the statement was error. *Newberry*, 191 Va. at 462, 61 S.E.2d at 326; *see also Scaggs*, 5 Va. App. at 5, 359 S.E.2d at 832.

## IV.

The record also supports Boney's claim that the prosecution violated a discovery order. On February 27, 1991, Boney moved for discovery and inspection, requesting the Commonwealth to provide all information which tended to exculpate Boney. A discovery order was entered on April 25, 1991, which provided in pertinent part:

> The Court directs the Commonwealth to furnish the Defendant with the names and any statements of witnesses whose statements would be exculpatory in nature as to guilt or punishment. This shall include statements that would contradict whatever the Commonwealth's theory of the case is or the inferences that they intend to argue from with respect to the case.

The Commonwealth's theory of the case was that Boney and his friends conspired to rob, returned to the party with the intent to rob, and shot Trammel during the course of an attempted robbery. The evidence adduced at trial supporting this theory was the testimony of Slater. Slater testified that after he and his friends returned to the party, a discussion about robbing two specific individuals took place. He

stated that "the individuals came out — the first one to come out was . . . Trammel. And he was confronted first." He further testified:

> Well, they were ordered — given orally to lay down, all of them to lay down and put their hands up. And the two — the guys that came out with Trammel, they held their hands up and they complied. And Trammel said he just wanted to go to his car. He didn't want any trouble.

> Then one of the individuals, who had his hands up, was struck. And then he laid on the ground. And then when I came out to take — from the shadow to take part in the robbery, a shot was fired.

The evidence that the Commonwealth failed to provide to Boney's counsel, notwithstanding the discovery order, consisted of the names and statements of Shonte Hamilton and Cher Harris. The Commonwealth stipulated that these statements were in the police reports when the discovery request was made.

> The suppression of evidence sought by discovery amounts to a due process violation only if it deprives the defendant of a fair trial, and the conviction will be reversed only if the evidence is *material* in the sense that its suppression undermines confidence in the outcome of the trial. Thus, failure to disclose exculpatory or impeachment evidence requires reversal only if the evidence was "material," and evidence is "material" only if there is a *reasonable probability* that had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome.

*MacKenzie v. Commonwealth*, 8 Va. App. 236, 244, 380 S.E.2d 173, 177 (1989) (citations omitted).

At the post trial hearing, Harris testified that after the party, she came out of the house with Trammel and Brown, who were immediately in front of her. While outside at the end of the garage, she "saw a young man on the left-hand side in the garage with a gun underneath his arm." She then "hollered, gun, and ran back down the stairs." She stated that the amount of time that transpired between her running and hearing gunshots was "[a] quick two seconds." Consistent with Brown's testimony, she testified that she never heard the person with the gun ask people to stop, raise their hands, get down on the floor,

make a request for money or jewelry, or indicate that a robbery was being attempted. Harris' testimony arguably contradicted Slater's testimony and the Commonwealth's theory of the case.

Likewise, Hamilton's affidavit discloses a motive other than robbery for the confrontation between Boney and Trammel. She stated that she was dancing with Trammel at the party on the night he was killed. She said Boney "saw [her] dancing with [Trammel] and asked if [Trammel] was trying to pick [her] up." Her testimony lends weight to the defense theory that Boney armed himself and waited in the dark, not for robbery, but to retaliate for the earlier altercations that occurred at the party.

■ The statements of Cher Harris and Shonte Hamilton are material because "there is a *reasonable probability* that had the evidence been disclosed to the defense, the result of the proceeding would have been different." *MacKenzie*, 8 Va. App. at 244, 380 S.E.2d at 177. In addition to contradicting Slater's testimony, the evidence would have affected defense counsel's trial preparation, assisted in cross-examining witnesses, and may have led defense counsel to other evidence in the case to refute the robbery theory. "When the Commonwealth elects to withhold exculpatory evidence on the ground that it is not material, it does so at its own peril and with the realization that the trial or appellate court may hold otherwise, thereby invalidating a conviction." *Cherricks v. Commonwealth*, 11 Va. App. 96, 102, 396 S.E.2d 397, 401 (1990).

## V.

Because the evidence upon a retrial will in all likelihood not be the same, we need not discuss whether the evidence at the earlier trial supported the trial judge's rulings granting and refusing certain instructions.

For the foregoing reasons, we reverse the convictions and remand the case for a retrial if the Commonwealth be so advised.

*Reversed and remanded.*

Bray, J., and Fitzpatrick, J., concurred.