## Richmond

### SYLVESTER LEWIS

v.

### COMMONWEALTH OF VIRGINIA

No. 1767-92-2

Decided March 1, 1994

COUNSEL

Christopher J. Collins, for appellant.

Virginia B. Theisen, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, J.**—Sylvester Lewis (Lewis) appeals his jury trial convictions for second degree murder and use of a firearm during the commission of a murder. Lewis asserts that the trial court erred in refusing to admit a hearsay statement. He contends that the statement should have been admitted because it was a statement against interest of a third party who was unavailable to testify. Lewis also appeals the denial of his post-conviction motion for a new trial. He contends a new trial should have been granted because after-discovered evidence showed that the Commonwealth failed to provide Lewis with exculpatory information. For the reasons that follow, we affirm Lewis' convictions.

## I.

### FACTUAL BACKGROUND

On April 16, 1992 at approximately 2:00 a.m., Douglas White (White) was looking out a second story window of his home on Bunch Place. White testified that he saw Lewis (whom he knew as "Sugarfoot") standing at the driver's side of a vehicle talking to Steve Bradley (Bradley), who was seated in the car. White heard Lewis say to Bradley, "You bought it, it's yours." As White turned his back to the window, he heard a gunshot. Looking back into the street, he saw Lewis running away with a gun in his hand. No one else was in the street.

White went into the street to call the police from a pay phone. He then went over to Bradley's car, which had rolled off the street, turned off the ignition and pulled Bradley, who had a gunshot wound, from the vehicle. White testified on cross-examination that he touched only the driver's side door handle and the ignition switch of the vehicle. Paul Tuttle, a forensic expert, testified that White's palm print was found "just below the chrome strip at the top of the door . . . as if [he had] leaned on to the car."

White testified that he stayed with Bradley until police and EMT personnel arrived. Bradley was transported to the Medical College of Virginia hospital, where he later died. White told the

uniformed officer who responded to his phone call that he had seen the incident from his window. White later identified Lewis as "Sugarfoot" from a photograph.

On direct and cross-examination, White admitted that he had been convicted of burglary and the misdemeanor of obstruction of justice involving giving a false name on a traffic citation.

Vera Foreman (Foreman), Lewis' girlfriend, testified that on the night of the shooting Lewis brought her some shrimp to eat at work. Foreman testified that she did not have time to eat the shrimp and intended to take them home with her. However, she left the shrimp at work and had to return to get them. This delayed her arrival at home until approximately 12:00 midnight. Foreman testified that Lewis was waiting for her when she arrived and that he stayed with her watching television until about 4:00 or 5:00 a.m.

On cross-examination, Foreman admitted that during her initial interview with police she had not stated that Lewis spent the night at her house. She testified that she had been confused about the date because the murder occurred on the morning of April 16 and she had not realized that the interviewing detective meant the pre-dawn hours, which she considered the "night" of April 15.

Ernest Harris (Harris) testified that on the night of the shooting, he and several friends were coming out of a house on Bunch Place between 11:30 and 11:45 p.m. Harris testified that he saw White on the corner of Bunch Place talking to someone named Sid. He further testified that he saw someone named Michael[1] talking to someone named Steve (not Steve Bradley) and later to Sid.

Lewis called Marilyn Olds (Olds) as a witness to testify that White's reputation for truthfulness was "not too good." Lewis also proffered testimony from Olds that Mitchell Washington (Washington) told Olds he had hidden the gun used to shoot Bradley. The court rejected the latter testimony as inadmissible hearsay. Washington was not called as a witness.

---

[1] At a side bar conference at trial and on brief, Lewis' counsel asserts that Michael (also referred to in the transcript as Michelle) refers to Mitchell Washington. Marilyn Olds testified that she knew "Michael" Washington; Harris testified only that he saw a person named "Michael."

Seventy-one days after entry of the final judgment order, Lewis petitioned the trial court to vacate the judgment and grant him a new trial. Lewis argued that the Commonwealth had failed to provide him with information that showed White had used aliases in the past. The parties stipulated that, apart from failing to disclose the use of aliases, the criminal record provided to Lewis was a complete and accurate statement of White's criminal convictions. Lewis argued that the use of aliases showed a tendency toward dishonesty on the part of a witness; therefore, the information was exculpatory and had been improperly withheld by the Commonwealth. The court denied the motion for a new trial, finding that the additional information would not have affected the jury's determination of credibility.

## II.

## ADMISSION OF HEARSAY STATEMENTS AGAINST INTEREST

A statement that is against the penal interest of the declarant at the time it is made is admissible as a declaration against interest exception to the hearsay prohibition. *Morris v. Commonwealth*, 229 Va. 145, 147, 326 S.E.2d 693, 694 (1985). However, before such a statement is admitted the party offering it must prove that the declarant is unavailable to testify at trial. *Yellow Cab Co. v. Eden*, 178 Va. 325, 336, 16 S.E.2d 625, 628 (1941); *Scaggs v. Commonwealth*, 5 Va. App. 1, 5, 359 S.E.2d 830, 832 (1987); *see also* 2 Charles E. Friend, *The Law of Evidence in Virginia* § 18-9 (4th ed. 1993). "The law is firmly established in Virginia that a declarant is unavailable if the declarant invokes the Fifth Amendment privilege to remain silent." *Newberry v. Commonwealth*, 191 Va. 445, 462, 61 S.E.2d 318, 326 (1950); *Boney v. Commonwealth*, 16 Va. App. 638, 643, 432 S.E.2d 7, 10 (1993).

In *Scaggs*, we held that a party cannot rely on the assumption that the declarant would refuse to testify against his own penal interest. 5 Va. App. at 5, 359 S.E.2d at 832. Where the party having the burden of showing the declarant's unavailability fails to call the declarant as a witness, a court will not assume that the witness will assert the privilege against self-incrimination, and out-of-court statements of the declarant are barred under the hearsay rule. *Id.*

Because Lewis did not call Washington as a witness, he failed to demonstrate that Washington would have invoked his Fifth Amendment privilege. The record in this case does not disclose any other basis on which the trial court might have found that Washington was unavailable to testify. *See* 2 Charles E. Friend, *supra*, § 18-9. Accordingly, the trial court did not err in refusing to admit Olds' testimony.

## III.

## FAILURE TO DISCLOSE USE OF ALIASES

Lewis' motion for a new trial was filed more than twenty-one days after the entry of a final disposition in the case. Prior to the expiration of the twenty-one day period, the trial court did not vacate or suspend execution of its judgment in order to retain jurisdiction, nor was it requested to do so. *See In re Commonwealth, Dep't of Corrections*, 222 Va. 454, 463, 281 S.E.2d 857, 862 (1981); Rule 1:1. Accordingly, the trial court lacked jurisdiction to vacate and reconsider the convictions. Its action, being a nullity, bars further review by this Court of the issue raised by Lewis flowing from the trial court's denial of his motion for a new trial.

For these reasons, we affirm Lewis' convictions.

*Affirmed.*

Benton, J., and Elder, J., concurred.