COURT OF APPEALS OF VIRGINIA


Present:  Judge Humphreys, Senior Judges Hodges and Overton
Argued at Chesapeake, Virginia


ANDRE LAMONT NOEL

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 1730-99-2          JUDGE WILLIAM H. HODGES
                                         JUNE 20, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF LANCASTER COUNTY
                  Joseph E. Spruill, Jr., Judge

          William A. Nunn, III, for appellant.

          Robert H. Anderson, III, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Andre Lamont Noel (appellant) appeals from a judgment of the

Lancaster County Circuit Court (trial court) convicting him of

conspiracy to distribute cocaine, distributing cocaine,

transporting cocaine into the Commonwealth, and possessing cocaine

with intent to distribute.  Appellant contends the trial court

erred by 1) denying his motion to suppress evidence seized during

a search of the house where he was living; 2) admitting certain

hearsay evidence; 3) admitting replicas of crack cocaine into

evidence; and 4) permitting the replica cocaine to be used to

enhance his sentence.  For the reasons that follow, we affirm the

trial court's judgment in part and reverse it in part.

──────────────
     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

## I.   Background

In the summer of 1998, Lieutenant Allen and Investigator Webb began investigating appellant's involvement in the "Jersey Boys" drug distribution ring.  As part of this investigation, Webb observed Arthur Fisher sell crack cocaine to undercover informant Mary Beale on August 12 and September 9, 1998.  On September 9, after determining how much cocaine Beale wanted to purchase, Fisher called appellant from Beale's apartment and requested the drugs.  Fisher left the apartment, but returned shortly thereafter, accompanied by appellant.  Fisher then gave Beale a quantity of crack cocaine in exchange for money.

Fisher testified that he obtained from appellant the cocaine he sold to Beale on August 12 and September 9, 1998.  Fisher testified that he also bought crack cocaine from appellant for his own consumption.

Allen eventually determined that the Jersey Boys--appellant, Edward Beckford, Keith Mayweather, and Daniel Ford--were operating out of a residence that was owned by Joseph Curry.  Curry had leased the house to Lakita Ball, who dated Mayweather.

On October 9, 1998, Allen obtained an arrest warrant for appellant on a failure to appear charge and proceeded to the Curry house to serve the warrant.  Ryan Smith responded to the door at the Curry house and Allen announced that he had an arrest warrant for appellant.  When Allen asked whether appellant was present, Smith responded that he would get

-

appellant and turned back into the house.  Allen followed Smith inside where he encountered and arrested appellant.

Allen advised appellant of his <u>Miranda</u> rights and expressed concern that there might be drugs on the premises.  Appellant responded that "there wasn't any drugs there.  Help yourself. Look wherever you want to look.  No problem."  Allen testified that appellant told him that he "stayed" at the Curry house "sometimes."

Allen, Webb, and the other deputies subsequently searched the house and the surrounding property.  They recovered quantities of crack cocaine from an abandoned refrigerator in a shed on the property, on the stairway leading to the attic in the house, on the top kitchen shelf, and over the doorway to the shed.  Webb estimated that the value of the cocaine seized totaled approximately $730.  The officers also found a single-edge razor blade with off-white residue on it on top of the kitchen refrigerator, a box of approximately two hundred miniature Ziploc bags, and an open package of single-edge razor blades (but no razor).  Under the floor vent in the room where appellant was apprehended, the officers found a small digital scale and a handgun.  Appellant possessed a pager and $192 in cash.

In a post-arrest statement to Allen and Webb, appellant said he lived at the Curry house with Mayweather, Ford and codefendant Beckford.  Appellant stated that Mayweather and

-

Beckford were the "main guys," while he was "just a salesman."
Appellant said the men were selling $10,000 worth of crack
cocaine each month and that he accounted for approximately
$2,000 of that figure. He admitted that the $192 he possessed
at the time of his arrest was money from drug sales. Appellant
stated that he was paid $300 plus shoes and clothes for his
efforts. He admitted selling crack cocaine to Fisher.
Appellant denied knowing that there had been cocaine in the
house when the police were searching. He explained that he
thought his codefendants had taken all the drugs with them on a
trip.

Curry testified at the suppression hearing that Ball was the
only person authorized to be living at the house. Appellant said
that he was living at the house with the permission of Mayweather,
who he thought was the lessee. Appellant testified at the
suppression hearing that he did not know Curry and that Curry had
never told him he could not stay in the house. Appellant claimed
he initially told Allen that he did not live at the Curry house.
He denied consenting to the search of the home.

Appellant was tried by the court sitting without a jury. At
the conclusion of the Commonwealth's evidence, the trial court
sustained appellant's motion to strike indictments CR99000061

-

through CR99000063,[1] and CR99000064 through CR99000066.[2]  The

court convicted appellant of the remaining charges, which are the

subject of this appeal.

## II.  Motion to Suppress

The trial court denied appellant's motion to suppress the

evidence seized by the sheriff's department during the October 9,

1998 search of the Curry house and property.  The court concluded

that appellant was trespassing and did not have standing to

contest the search.  The court noted that appellant had, at least

initially, denied living there and that appellant consented to the

search.

Appellant contends Allen's initial entry into the house was

illegal and that the subsequent search of the premises was

tainted by this unlawful entry.  The Commonwealth responds that

appellant, as a trespasser, did not have a reasonable

expectation of privacy in the premises.  Moreover, he consented

to the search.

In reviewing a motion to suppress, "[t]he finding of the

trial judge as to the credibility of witnesses and the weight to

---

[1] These indictments charged appellant with transporting
cocaine into Virginia, respectively, between July 1 and July 31,
1998, between August 1 and August 31, 1998, and between
September 1 and September 30, 1998.

[2] These indictments charged appellant with distributing
cocaine to Arthur Fisher, respectively, between July 1 and July
31, 1998, between August 1 and August 31, 1998, and between
September 1, and September 30, 1998.

-

be given their testimony stands on the same footing as the verdict of a jury, and will not be disturbed unless it is plainly wrong or without evidence to support it." Lanier v. Commonwealth, 10 Va. App. 541, 549, 394 S.E.2d 495, 500 (1990).

Police may not enter and search a house without a warrant, in the absence of exigent circumstances. See Payton v. New York, 445 U.S. 573, 590 (1980). But, "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Id. at 603. See Barnes v. Commonwealth, 234 Va. 130, 135, 360 S.E.2d 196, 200 (1987); cf. Steagald v. United States, 451 U.S. 204, 216 (1981) (holding that an arrest warrant for a third party was insufficient to justify law enforcement officers in entering the defendant's house to search for the third party).

In the present case, Allen had a warrant for appellant's arrest. The officers went to the Curry house, where they had reason to believe appellant resided and was currently located. They entered the house to execute the warrant based upon the belief that appellant was present there, and they did not search the house until after obtaining appellant's consent. Accordingly, Allen and the other officers entered the house lawfully, they searched the house and premises pursuant to

-

appellant's consent, and the trial court properly denied the motion to suppress.[3]

### III.  Hearsay Statements of Beckford and Parker

Appellant was tried jointly with codefendant Edward Beckford.  Over appellant's objection, the trial court admitted into evidence against appellant a post-arrest statement Beckford made to Allen.  Beckford did not testify at trial.  The trial court also admitted into evidence hearsay statements made to Allen and Webb by co-conspirator Faith Parker.

The statements of Beckford and Parker implicated appellant as a significant participant in the drug operations headquartered at the Curry house.  Indeed, in granting appellant's motion to strike all the indictments for transporting cocaine into the Commonwealth except case number CR99000060 (charging appellant with transporting cocaine into the Commonwealth between June 1 and June 30, 1998), the trial court noted that the only evidence supporting case number CR99000060 was the statement Parker made to Webb and Allen.

The admission of out-of-court statements made by an unavailable accomplice that tend to incriminate the defendant violates the Confrontation Clause of the Sixth Amendment.  See Lilly v. Virginia, 527 U.S. 116, 139 (1999).  Beckford and

_____

[3] Because the officers' entry was lawful and the search was consensual, we express no opinion on whether appellant had standing to object to the entry and search.

-

Parker were both accomplices of appellant, both made statements tending to incriminate appellant, and neither was available to testify at appellant's trial.[4]  Thus, the trial court erred in admitting this evidence.  Appellant's convictions must be reversed, therefore, unless we can determine that the error was harmless.

> The standard that guides our analysis of the harmless error issue in this case is clear.  Thus, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt;" otherwise the conviction under review must be set aside.  This standard requires a determination of "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction."  In making that determination, the reviewing court is to consider a host of factors, including the importance of the tainted evidence in the prosecution's case, whether that evidence was cumulative, the presence or absence of evidence corroborating or contradicting the tainted evidence on material points, and the overall strength of the prosecution's case.

Lilly v. Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999) (citations omitted).

Appellant's confession and the fruits of the October 9, 1998 search, standing alone, proved beyond a reasonable doubt that appellant was guilty of the conspiracy charge and the possession with intent charge.  Appellant's confession, the

_____

[4] Beckford elected not to testify, and Parker could not be located.

-

stipulation of Beale's testimony, and the testimony of Webb, Allen, and Fisher proved appellant's guilt beyond a reasonable doubt of distributing cocaine on September 9, 1998. Accordingly, the trial court's error was harmless beyond a reasonable doubt as it pertained to these charges.

We cannot reach the same conclusion, however, with regard to the transportation charge. The trial court noted that the only evidence tending to prove appellant guilty of this charge was the inadmissible hearsay statements of Parker. Appellant's confession was insufficient to establish his guilt of this charge, even as a principal in the second degree. Accordingly, appellant's conviction for transporting cocaine into the Commonwealth between June 1 and June 30, 1998, must be reversed.

## IV.   Admissibility of Simulated Cocaine

Based on descriptions Parker gave of the crack cocaine she helped to transport into Virginia for her co-conspirators, Allen created simulated crack cocaine out of dental stone (Commonwealth's Exhibits 7 and 8). The trial court admitted this demonstrative evidence over the objections of appellant, who asserted that the foundation for admitting this evidence was based entirely on the inadmissible hearsay statements of Parker.

During Allen's testimony, the Commonwealth marked for identification purposes only, simulated crack cocaine prepared by Francis Norris (Commonwealth's Exhibit 9). Appellant objected to this evidence on hearsay grounds, and the

-

Commonwealth reiterated that it was going to wait and introduce the exhibit when Norris testified.

During Norris' testimony, the court reporter asked whether Exhibit 9 had been admitted into evidence. The Commonwealth's Attorney expressed his belief that the exhibit had been admitted into evidence. The trial court stated that it had not ruled on the exhibit's admissibility, and appellant agreed. After appellant cross-examined Norris, the trial court admitted the exhibit into evidence without objection.

## A. Exhibits 7 and 8

A party offering an exhibit has the burden of laying a proper foundation for its introduction into evidence. See Brown v. Corbin, 244 Va. 528, 531, 423 S.E.2d 176, 178 (1992). The foundation for Exhibits 7 and 8 was based entirely upon Parker's inadmissible hearsay. The trial court erred, therefore, in admitting this evidence. Nevertheless, appellant has failed to establish how he was prejudiced by the admission of this demonstrative evidence, so the error was harmless. See Clagett v. Commonwealth, 252 Va. 79, 91, 472 S.E.2d 263, 270 (1996) (holding that the erroneous admission of evidence is harmless if the record contains "overwhelming" evidence of guilt).

## B. Exhibit 9

"No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good

-

cause shown or to enable the Court of Appeals to attain the ends of justice."  Rule 5A:18.

While appellant objected when the Commonwealth marked Exhibit 9 for identification--before Norris testified regarding the exhibit--appellant did not object when the court actually admitted the evidence.  Accordingly, Rule 5A:18 bars our consideration of this question on appeal.  Moreover, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

## V.   Hearsay Statements of Thomas Lee

Appellant objected to Allen testifying regarding statements made to Allen by Thomas "Peanut" Lee.  The Commonwealth did not subpoena Lee, who was incarcerated on burglary and larceny charges, to testify at appellant's trial.  As of the date of trial, Lee had not been charged in connection with the indictments pending against appellant.  The Commonwealth asserted that Lee should be considered unavailable because he was incarcerated and if the Commonwealth called Lee and compelled him to testify, Lee would be immune from prosecution for any matters about which he testified.

The trial court found that Lee was unavailable and admitted the evidence as statements against Lee's penal interests.

Allen reported that Lee claimed to have performed services at the Curry house for Mayweather.  Lee stated that he purchased crack cocaine from appellant approximately twenty-five times and

-

that one day he saw appellant with sizable piece of crack cocaine.  In his confession, appellant admitted selling crack cocaine to Lee.

In order for a declaration against interest to be admitted into evidence, the offering party must establish that the declarant is unavailable.  See Randolph v. Commonwealth, 24 Va. App. 345, 355, 482 S.E.2d 101, 105 (1997).  "The law is firmly established in Virginia that a declarant is unavailable if the declarant invokes the Fifth Amendment privilege to remain silent."  Boney v. Commonwealth, 16 Va. App. 638, 643, 432 S.E.2d 7, 10 (1993) (emphasis added).  "Where the party having the burden of showing the declarant's unavailability fails to call the declarant as a witness, a court will not assume that the witness will assert the privilege against self-incrimination, and out-of-court statements of the declarant are barred under the hearsay rule."  Lewis v. Commonwealth, 18 Va. App. 5, 8, 441 S.E.2d 47, 49 (1994).

The Commonwealth failed to establish that Lee would invoke his Fifth Amendment rights if called to testify and thus failed to prove that he was unavailable.  The trial court erred, therefore, in admitting this evidence.  Appellant has not established, however, that he was prejudiced by this evidence.  Appellant confessed to selling crack cocaine to Lee and others, and also confessed to working in conjunction with Mayweather,

-

Beckford, and Ford.  Accordingly, the trial court's error was harmless.[5]

### VI.  Hearsay Statements of Daniel Ford

Appellant contends the trial court erred in admitting into evidence the hearsay statements of codefendant Daniel Ford, which were related to the court by Francis Norris.  Norris testified regarding a telephone conversation he had with "Danny" after he found suspected contraband at the house Norris was renting to Parker.  Appellant objected at trial on the ground that the Commonwealth had failed to establish that the person Norris talked to was Ford.

In his opening brief, appellant presented no argument in support of his assertion that the trial court erred in admitting this evidence.  Accordingly, appellant has waived his right to have this matter addressed by the Court.  See Littlejohn v. Commonwealth, 24 Va. App. 401, 409, 482 S.E.2d 853, 857 (1997); Rule 5A:20(e).

### VII.  Use of Exhibits 7 and 9 at Sentencing Hearing

Appellant objected to the probation officer's use of the weight of Exhibits 7 and 9--the simulated cocaine--to prepare

---

[5] Although appellant raised a Lilly objection to this evidence at trial, he limits his argument in his brief to the issue of unavailability.  We do not, therefore, express any opinion on whether Lilly applies to statements made by non-accomplices.  Moreover, any constitutional error committed by admitting this evidence was harmless beyond a reasonable doubt.

-

the sentencing guidelines.  The Commonwealth responded that the guidelines were proper.  The trial court did not respond to appellant's argument, but merely stated "All right."

Including the weight of the simulated cocaine as a factor, the sentencing guidelines recommended a sentence between six years, three months and ten years, three months, with a midpoint of eight years, four months.  Appellant asserted that calculating the guidelines without including the weight of the simulated drugs resulted in a recommended punishment range of two years, one month to four years in prison, with a midpoint of three years, four months.

In sentencing appellant to a total, active term of incarceration of ten years, the trial court stated:  "The guidelines are just that.  They're guidelines.  I don't often exceed guidelines, but I do on occasion.  This is an occasion where I think the guidelines are perhaps too modest."  (Emphasis added.)

When a defendant raises an objection, it is his responsibility to obtain a ruling from the trial court.  If the defendant fails to do this, then "there is no ruling for us to review on appeal."  Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 489 (1998).  See Taylor v. Commonwealth, 208 Va. 316, 324, 157 S.E.2d 185, 191 (1967) (finding that the defendant's objection was not preserved for appeal where he did not obtain a ruling from the court).

Because the trial court never expressly ruled on appellant's objection to the sentencing guidelines, there is no ruling for this Court to review. The court's statement about exceeding the guidelines suggests that the court agreed with appellant that the simulated cocaine weights should not have been considered in calculating the guidelines. The court did not, however, amend the actual sentencing guidelines form. Moreover, as the court noted, the sentencing guidelines are not mandatory and the sentences imposed did not exceed the statutory maximums for these crimes. See Hunt v. Commonwealth, 25 Va. App. 395, 405, 488 S.E.2d 672, 677 (1997) (a judge's failure to follow the sentencing guidelines is not reviewable on appeal); Code § 19.2-298.01(F).

For the foregoing reasons, the judgment of the trial court is affirmed as to indictments CR99000002, CR99000003 and CR99000067. We reverse the conviction as to indictment CR99000060 and dismiss that indictment.

Affirmed in part,
reversed and
dismissed in part.

-