508 S.E.2d 891

**Deshon W. PITT**

v.

**COMMONWEALTH of Virginia.**

**Record No. 1015–97–1.**

Court of Appeals of Virginia,
Norfolk.

Jan. 5, 1999.

Donald S. Clarke, Virginia Beach, for appellant.

Kathleen B. Martin, Assistant Attorney General (Mark L. Earley, Attorney General, on brief), for appellee.

Present: BENTON, ELDER and LEMONS, JJ.

ELDER, Judge.

Deshon W. Pitt (appellant) appeals his conviction for attempted robbery. He contends the trial court abused its discretion when it granted the Commonwealth's pretrial motion made pursuant to Code § 19.2–262.1 to try him jointly with Lambert Lee Bonds. Appellant argues that, because the Commonwealth intended to introduce at their joint trial Bonds' out-of-court confession incriminating appellant, the trial court erred when it concluded appellant's Sixth Amendment right to confront the witnesses against him would not be compromised. The Commonwealth contends that Bonds' statement was admissible under Virginia's "statement against penal interest" exception to the hearsay rule, which also rendered it admissible against appellant without violating appellant's rights under the Confrontation Clause. For the reasons that follow and the position taken by Judge Lemons in his concurring opinion, we affirm the conviction. I would hold, as would Judge Benton, that admission of the statement violated Virginia's hearsay rule. But, I would hold that its admission was harmless error. I would also hold that its admission did not violate the Confrontation Clause. For these reasons, I would hold that the trial court's error in joining the trial was harmless.

## I.

## FACTS

Around 4:00 a.m. on May 29, 1996, appellant and Bonds were arrested in connection with the attempted robbery of Randy Williams (victim). Appellant and Bonds were taken to police headquarters, where each separately waived his *Mi-*

*randa* rights and made a statement to Detective Samuel A. Thomson. Appellant and Bonds were subsequently indicted for attempted robbery.

Prior to trial, the Commonwealth moved for a joint trial of appellant and Bonds pursuant to Code § 19.2–262.1. At a hearing on the Commonwealth's motion, appellant's counsel argued that, because both appellant and Bonds made statements to Detective Thomson that the Commonwealth would seek to admit at trial and because neither defendant was likely to testify, "the Commonwealth is going to have a problem with [*Bruton*]." [1] Appellant's counsel argued:

[U]nder [*Bruton*], the United States Supreme Court has found that in instances where each defendant has made statements and if neither one takes the stand, neither one of those defendant's statements can be used against the other.

\* \* \* \* \* \*

... I would ask the court, based on the fact that the Commonwealth has got a very real [*Bruton*] problem here ... that regardless of judicial economy[,] the prejudice to either one of these defendants is going to be so great depending upon the admissibility of either portions of their statements that they can't be tried together. They need, under the law, to be tried separately.

At the conclusion of the hearing, the trial court granted the Commonwealth's motion for a joint trial.

At the joint jury trial, the victim testified that he was walking home from a friend's house at about 3:45 a.m. on May 29, 1996, when he saw appellant, Bonds, and one other person riding bicycles in a parking lot. Bonds and the unidentified person rode past the victim, and appellant stopped his bike next to the victim. According to the victim, appellant told him, "I got that killer," and asked the victim if he was "looking." The victim understood that appellant was talking about illegal drugs and responded by saying, "No, I don't do

---

1. *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). *See infra* note 3.

things like that." Appellant then rode away on his bike in "the same direction the other guys was going."

The victim testified that, after appellant left him, he had "a weary feeling something [was] going to happen." As a precaution, he removed a twenty-dollar bill from his pocket and placed it inside his mouth. The victim continued walking toward his home. A short while later, appellant and Bonds returned on their bikes and followed the victim. Appellant started asking the victim about drugs. The victim told appellant, "I don't do that," and continued walking. After the victim attempted to elude appellant and Bonds by cutting through a grassy area, appellant approached on his bike, dismounted, and blocked the victim's path. Appellant then grabbed the victim, and the two started "tussling and wrestling." According to the victim, Bonds then joined the fray and wrestled the victim to the ground. Appellant placed his knees on the victim's arms, searched through his pockets, and attempted to pry open the victim's mouth. The victim heard appellant say, "It is in his mouth." After about three minutes, the police arrived at the scene, and appellant attempted to flee. The victim testified he was not injured during the fracas with appellant and Bonds, and no property was actually taken from him.

Detective Thomson testified that he met with appellant and Bonds shortly after they were brought to police headquarters on May 29, 1996. Detective Thomson met with appellant and Bonds in separate rooms at different times. The detective testified that he first met with appellant at 5:45 a.m. According to Detective Thomson, appellant waived his *Miranda* rights and initially stated he "knew nothing about the robbery." Appellant stated he thought he had been arrested for assault. Appellant also stated that he knew the victim and that the victim "was bothering him trying to make cocaine sales." At this point, the detective stepped out of the room with appellant and met with Bonds at 5:55 a.m. The record does not indicate what, if anything, Bonds told the detective during this meeting.

Detective Thomson then returned at 6:00 a.m. and told appellant he did not believe his account. After Detective Thomson provided appellant with a cigarette, appellant stated he was riding bicycles with Bonds when he encountered the victim. Appellant stated he attempted to "obtain cocaine in case [the victim] had cocaine on him." Appellant stated that he proceeded to "[get] in a struggle with [the victim]" and "[t]hey went to the ground." According to appellant, "Bonds helped to get [the victim] on the ground." Appellant stated that, when he was on the ground with the victim, he "tried to get cocaine out of [the victim's mouth]" by prying it open with his hands.

Detective Thomson testified that he "came back at 6:48 a.m." to speak with Bonds, who had previously waived his *Miranda* rights. Bonds indicated that he wished to make a statement. Detective Thomson testified that he and Bonds discussed Bonds' account of the morning's events, and, at 7:15 a.m., the detective recorded Bonds' statement on a tape.

At this point in the trial, the Commonwealth's attorney indicated her intent to play for the jury the tape of Bonds' statement. Before the tape was played, appellant's counsel objected to the admission of Bonds' statements in the case against appellant. The trial court overruled the objection, stating, "The jury will be instructed at the time. The evidence is individual as to evidence against each defendant. It will be clear to them."

The tape of Bonds' statement was then played for the jury and admitted into evidence as Commonwealth's exhibit 1. In his statement,[2] Bonds said that he and appellant were riding bikes together around 4:00 a.m. on May 29 when they saw the victim. Bonds stated that appellant approached the victim to inquire about obtaining "rock cocaine." Bonds stated that appellant "smoke[d] a little rock," but he (Bonds) did not use cocaine. According to Bonds, when the victim did not "give [appellant] a piece of the rock," appellant met up with Bonds

---

2. A transcript of this statement is attached as an appendix.

and told Bonds to ride with him as he followed the victim. Appellant then rode ahead of Bonds and started talking to the victim. As Bonds approached on his bike, appellant and the victim started wrestling. Bonds stated that, when he saw the victim "getting the best of [appellant]," Bonds "bumped into them to give [appellant] an equal chance with the wrestling." As Bonds was on the ground wrestling with appellant and the victim, he saw appellant attempt to pry open the victim's mouth in order to take cocaine appellant believed was hidden there. Bonds stated that he "just wrestled" the victim down "like a football tackle." When asked if the victim was injured, Bonds stated, "there was no trying to hurt no one or nothing like that." He also stated that neither he nor appellant took any of the victim's property. Bonds concluded his statement by saying that "everybody knows ... I'm not a robber or anything like that." Near the end of the interview, Detective Thomson reminded Bonds that the detective had earlier told him he would talk to the Commonwealth's attorney and the magistrate "in reference to this case." After the tape was played, Detective Thomson testified that, following the interview with Bonds, he took appellant and Bonds to the magistrate. Detective Thomson testified that he told the magistrate that "Mr. Bonds was cooperative."

At the conclusion of the Commonwealth's case, appellant called Bonds as a witness. Bonds asserted his Fifth Amendment right against self-incrimination and refused to testify about the incident with the victim.

At the conclusion of the evidence, the trial court gave the following instruction to the jury:

The Court instructs the jury that any statements made by Lambert Lee Bonds to the police are not evidence against Deshon W. Pitt and may not be considered by you in determining the guilt or innocence of Deshon W. Pitt.

> * * * * * *

The Court instructs the jury that the Commonwealth's Exhibit No. 1 is not evidence against the Defendant,

Deshon Pitt, and should not be considered by you against him.

The jury convicted appellant of attempted robbery and sentenced him to ten years in prison. Bonds was found guilty of assault and battery and sentenced to six months in jail and a fine of $1,000.

## II.

### MOTION FOR JOINT TRIAL UNDER CODE § 19.2–262.1

■ Appellant contends the trial court abused its discretion by permitting him to be tried jointly with Bonds pursuant to the provisions of Code § 19.2–262.1. He argues the trial court erred when it concluded that a joint trial did not pose a serious risk of compromising appellant's right under the Sixth and Fourteenth Amendments to confront the witnesses against him. Appellant argues that the portions of Bonds' taped statement that incriminated appellant were inadmissible against appellant under the Sixth Amendment's Confrontation Clause because Bonds was unavailable for cross-examination and his statement did not bear adequate "indicia of reliability." [3] The Commonwealth argues that Bonds' statement was properly admitted as a statement against penal interest under Virginia hearsay rules and, therefore, did not violate the Confrontation Clause. I would hold that the admission of

---

**3.** The Commonwealth argues that Rule 5A:18 bars appellant from arguing on appeal that his Sixth Amendment right to cross-examine Bonds was prejudiced by the admission of Bonds' confession at a joint trial. The Commonwealth asserts that "this argument was not raised with specificity in the trial court."

Appellant's reference to the United States Supreme Court's decision in *Bruton*, 391 U.S. 123, 88 S.Ct. 1620, at the hearing on the Commonwealth's motion for joinder was sufficient under Rule 5A:18 to place the trial court on notice that he was relying on his Sixth Amendment right to cross-examine Bonds as a ground for his objection to a joint trial. In *Bruton*, the Supreme Court relied squarely on the Sixth Amendment's Confrontation Clause for its holding that a jury instruction is insufficient to cure the prejudice caused when a statement by a non-testifying codefendant incriminating the defendant is admitted at a joint trial. *See id.* at 126, 88 S.Ct. at 1622–23.

Bonds' statement violated Virginia's hearsay rule but that its admission was harmless.

**▬** The relevant portion of the version of Code § 19.2–262.1 in effect at the time of the Commonwealth's motion for joinder stated:

> On motion of the Commonwealth, for good cause shown, the court, in its discretion, may order persons charged with participating in contemporaneous and related acts or occurrences ... to be tried jointly unless such joint trial would constitute prejudice to a defendant. If the court finds that a joint trial would constitute prejudice to a defendant, the court shall order severance as to that defendant or provide such other relief justice requires.[4]

"[P]rejudice does not exist merely because a co-defendant has a better chance of acquittal if tried separately...." *Barnes v. Commonwealth*, 22 Va.App. 406, 412–13, 470 S.E.2d 579, 582 (1996). Rather, "[p]rejudice requiring severance ... results only when 'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Id.* at 412, 470 S.E.2d at 582 (quoting *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993)); *see also Adkins v. Commonwealth*, 24 Va.App. 159, 163, 480 S.E.2d 777, 779 (1997) (defining "actual prejudice"). "[P]rejudice may be found ... where evidence, inadmissible against a defendant if tried alone, is admitted in a joint trial against a co-defendant." *Barnes*, 22 Va.App. at 412, 470 S.E.2d at 582. " 'The risk of prejudice will vary with the facts in each case,' and the decision to permit a joint trial is entrusted to the sound discretion of the trial court." *Adkins*, 24 Va.App. at 163, 480 S.E.2d at 779 (quoting *Barnes*, 22 Va.App. at 412, 470 S.E.2d at 582).

---

**4.** In 1997, the General Assembly amended Code § 19.2–262.1 by substituting "shall order" for "in its discretion, may order" in the first sentence of the statute. *See* 1997 Va. Acts, ch. 518.

I now examine whether Bonds' statement was admissible against appellant and, if it was not, whether its admission in the joint trial prejudiced appellant.

## A.

## VIRGINIA'S HEARSAY RULE: STATEMENT AGAINST PENAL INTEREST EXCEPTION

The Commonwealth correctly concedes that Bonds' statements were hearsay because they were out-of-court assertions offered to prove the truth of the matter asserted. *See Stevenson v. Commonwealth,* 218 Va. 462, 464–65, 237 S.E.2d 779, 781 (1977) (defining hearsay). "As a general rule, hearsay evidence is incompetent and inadmissible," and "[t]he party seeking to rely upon an exception to the hearsay rule has the burden of establishing admissibility." *Neal v. Commonwealth,* 15 Va.App. 416, 420–21, 425 S.E.2d 521, 524 (1992).

### 1.

*Admissibility of a codefendant's confession against an accused as a statement against penal interest under Virginia's hearsay rule*

The admissibility of a statement made by an unavailable witness that is against his or her penal interests "is a 'firmly rooted' exception to the hearsay rule in Virginia." [5] *Raia v. Commonwealth,* 23 Va.App. 546, 552, 478 S.E.2d 328,

---

**5.** As early as 1923, the Virginia Supreme Court recognized this exception for statements incriminating a third-party declarant and exculpating an accused, either directly or indirectly. *See Hines v. Commonwealth,* 136 Va. 728, 739–50, 117 S.E. 843, 846–49 (1923); *see also Newberry v. Commonwealth,* 191 Va. 445, 460–62, 61 S.E.2d 318, 325–26 (1950). However, until more recently, no Virginia appellate court appears to have applied this principle in the context of a party's efforts to admit an accomplice's statement or confession against penal interest that also incriminates the accused. *See, e.g., Chandler v. Commonwealth,* 249 Va. 270, 278–79, 455 S.E.2d 219, 224–25 (1995); *Scaggs v. Commonwealth,* 5 Va.App. 1, 4–5, 359 S.E.2d 830, 831–32 (1987) (holding that accomplice's out-of-court statement incriminating accused would have been admissible as statement against penal interest of

331 (1996). Under the statement against penal interest exception to Virginia's hearsay rule, an out-of-court statement is admissible to prove the truth of the matters asserted therein if three requirements are met: (1) "the declarant must be 'unavailable' to testify at trial"; (2) "the statement must be against the declarant's interest at the time it was made"; and (3) "the declarant must be aware at the time the statement is made that it is against his or her interest to make it." *Randolph v. Commonwealth*, 24 Va.App. 345, 355, 482 S.E.2d 101, 105–06 (1997) (citations omitted). In addition, the record must contain evidence other than the declaration itself establishing its reliability, such as independent evidence connecting the declarant with the confessed crime.[6] *See id.* at 355–56, 482 S.E.2d at 106. Determining whether a statement against penal interest is reliable "lies within 'the sound discretion of the trial court, to be determined upon the facts and circumstances of each case.'" *Raia*, 23 Va.App. at 550, 478 S.E.2d at 330 (quoting *Ellison v. Commonwealth*, 219 Va. 404, 408, 247 S.E.2d 685, 688 (1978)).

## 2.

*Admissibility of Bonds' confession against appellant as a statement against penal interest under Virginia's hearsay rule*

■ Bonds' hearsay statements to Detective Thomson that tended to incriminate appellant do not constitute statements against Bonds' penal interest and, therefore, were not directly admissible against appellant under the statement against pe-

---

accomplice if Commonwealth had proved accomplice was unavailable but that error in admission of statement was harmless).

**6.** Such evidence may include testimony "from other witnesses to whom the confession has been made or extrinsic evidence linking the confessor to the crime, or a combination of both." *Hernandez v. Commonwealth*, 15 Va.App. 626, 633, 426 S.E.2d 137, 141 (1993); *see Raia*, 23 Va.App. at 551, 478 S.E.2d at 330 (holding statement reliable due to voluntariness of codefendants' confessions, corroboration, consistency with physical evidence, and circumstances surrounding giving of statement and codefendant's demeanor).

nal interest exception. Bonds' statement to Detective Thomson satisfies only two of the three elements of a statement against penal interest. Under the first element, the record indicates Bonds was unavailable as a witness because he asserted his Fifth Amendment right not to testify. *See Randolph*, 24 Va.App. at 356, 482 S.E.2d at 106. Under the second element, Bonds' statement was against his penal interest because he admitted he tackled the victim to the ground, which not only constituted a battery, for which he was convicted, but also assisted appellant's attempt to rob the victim, thereby subjecting Bonds to liability as a principal in the second degree for attempted robbery.

However, the record does not support the conclusion that Bonds was *aware* his comments, particularly the portions incriminating appellant, were against his penal interest at the time he made them. *See Lilly v. Commonwealth*, 255 Va. 558, 573, 499 S.E.2d 522, 533, *cert. granted*, —— U.S. ——, 119 S.Ct. 443, —— L.Ed.2d —— (1998). As the Supreme Court held in *Lilly*, a "statement's admissibility is based upon the [declarant's] *subjective* belief that he is making admissions against his penal interest."[7] *Id.* (emphasis added). In *Lilly*, the declarant admitted that he stole liquor during the breaking and entering of the victim's house. *Id.* at 572, 499 S.E.2d at 533; *see also Chandler v. Commonwealth*, 249 Va. 270, 278–79, 455 S.E.2d 219, 224–25 (1995) (holding evidence proved declarant knew statement was against her interest because she expressly told investigating officer that "she thought she could be an accessory to the crimes"); *Randolph*, 24 Va.App. at 356–57, 482 S.E.2d at 106 (holding evidence proved declarant knew statement was against her interest because she admitted, while under arrest for credit card theft, that she and

7. Under Federal Rule of Evidence 804(b)(3), which governs the admissibility of declarations against penal interest in federal proceedings, "[t]he question ... is always whether the statement was sufficiently against the declarant's penal interest 'that a reasonable person in the declarant's position would not have made the statement unless believing it to be true,' and this question can only be answered in light of all the surrounding circumstances." *Williamson v. United States*, 512 U.S. 594, 603–04, 114 S.Ct. 2431, 2437, 129 L.Ed.2d 476 (1994).

appellant went to the airport "to steal ... to pick pockets"); *Raia*, 23 Va.App. at 549–50, 478 S.E.2d at 330 (holding evidence proved declarant knew statement was against her interest because she admitted in statement that she and defendant had planned to lure victim to parking area where defendant would do "whatever was necessary, including shooting [victim]," to "remove [victim] from her life" and that the plan "was more her idea than [defendant's]").

In appellant's case, by contrast, the vast majority of Bonds' statement placed the blame on appellant for the fracas with the victim and minimized Bonds' role in the incident. He characterized his role as that of an innocent bystander who intervened only when necessary to protect appellant. Bonds stated that appellant used cocaine and approached the victim in order to obtain a quantity of this drug. He stated that appellant started wrestling with the victim when the victim "didn't give [appellant] a piece of the rock" and that appellant's intention was to pry open the victim's mouth and take the cocaine he thought was hidden there. Bonds' statement that he did not use cocaine tended to negate any motive he might have had for robbing the victim. In addition, he stated he rode behind appellant and the victim and "caught up to them." His statements that he approached the scene of the confrontation after appellant and the victim started talking and that he "didn't know if [appellant] knew this guy or what" also tend to show he was unaware of appellant's intent. Bonds stated that he tackled appellant and the victim only when it appeared "the victim was getting the best of [appellant] in the wrestling." He also down-played the extent of his intervention. He stated that he "just wrestled [the victim] down," that it was "like a football tackle," and that "there was no trying to hurt no one or nothing like that." Bonds concluded his statement by saying, "everybody knows ... that I'm, you know, I'm not a robber or anything like that."

Unlike the statements in *Lilly, Chandler, Randolph* and *Raia*, Bonds' statement did not indicate he was aware that his statement implicated him in appellant's attempt to rob the victim. *See Lilly*, 255 Va. at 572, 499 S.E.2d at 533; *Chan-*

*dler,* 249 Va. at 278–79, 455 S.E.2d at 224–25; *Randolph,* 24 Va.App. at 356–57, 482 S.E.2d at 106; *Raia,* 23 Va.App. at 549–50, 478 S.E.2d at 330. Bonds made no express statement indicating his belief that he could be charged as an accessory to appellant's attempted robbery. Rather, if his statement is taken at face value, Bonds' description of the incident with the victim indicates that appellant independently decided to attempt to rob the victim and that Bonds was surprised by appellant's actions. According to Bonds, he joined only to "give [appellant] an equal chance with the wrestling" when it appeared the victim was "getting the best of [him]" and not with the intent to assist appellant's attempt to rob the victim.

The Commonwealth does not argue that Bonds' statement falls under any other exception to the hearsay rule. Bonds' statement to Detective Thomson was thus not admissible against appellant.

### 3.

*Use of a limiting instruction to prevent jury from considering Bonds' confession in determining appellant's guilt*

The trial court acknowledged some concern over whether Bonds' statement was admissible against appellant, for it expressly instructed the jury that Commonwealth's exhibit 1 and Bonds' statements "to the police are not evidence against [appellant] and may not be considered by you in determining the guilt or innocence of [appellant]." However, this instruction was insufficient to avoid prejudice to appellant.

In the trial of a single defendant, we ordinarily apply the principle that, "[w]hen evidence that might otherwise be hearsay is admitted for a limited, non-hearsay purpose, the trial court must instruct the jury that they are to consider the evidence for the specific limited purpose; where such a limiting instruction is given, we presume that the jury followed that instruction." *Hanson v. Commonwealth,* 14 Va.App. 173, 187, 416 S.E.2d 14, 22 (1992). We see no reason why this principle may not *ordinarily* be applied when code-fendants are tried jointly under Code § 19.2–262.1 and evi-

dence is introduced which is admissible against one codefendant but inadmissible against another. *See Richardson v. Marsh,* 481 U.S. 200, 206–07, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176 (1987) (recognizing "the almost invariable assumption of the law that jurors follow their instructions"). As we recognized in *Barnes,* 22 Va.App. at 412, 470 S.E.2d at 582, "[i]n determining the propriety of ordering a joint trial of multiple defendants, the degree of prejudice may be balanced against the effectiveness of using other measures to cure any such risk, such as limiting instructions."

However, for the reasons discussed by the United States Supreme Court in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)—a case dealing with the admissibility, in a joint trial, of codefendants' confessions under the Confrontation Clause—the trial court's limiting instruction was insufficient to prevent the jury's improper consideration of Bonds' statement as evidence against appellant under the facts of this case. As the Court noted in *Bruton,*

> there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial.

*Id.* at 135–36, 88 S.Ct. at 1627–28 (citations omitted). Here, as in *Bruton,* "[t]he effect is the same as if there had been no instruction at all." *Id.* at 137, 88 S.Ct. at 1628; *see Richardson,* 481 U.S. at 208–09, 107 S.Ct. at 1707–08 (limiting *Bruton* to cases in which codefendant's confession "expressly implicate[d]" defendant; permitting admission of redacted confession with limiting instruction in cases in which codefendant's confession is not incriminating on its face and becomes so only when linked to other evidence).

Because a limiting instruction could not resolve the error resulting from the admission of Bonds' confession directly

inculpating appellant, I would hold that the trial court abused its discretion by permitting appellant to be tried jointly with Bonds under Code § 19.2–262.1.

## B.

## HARMLESS ERROR

Although the trial court erred in granting the Commonwealth's motion for joinder, that error was harmless under Virginia law.

> In Virginia, non-constitutional error is harmless "[w]hen it *plainly appears* from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01–678 (emphasis added). "[A] fair trial on the merits and substantial justice" are not achieved if an error at trial has affected the verdict. Consequently, under Code § 8.01–678, a criminal conviction must be reversed unless "it plainly appears from the record and the evidence given at the trial that" the error did not affect the verdict. An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same.

*Lavinder v. Commonwealth,* 12 Va.App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (*en banc*).

An error is harmless (1) if "other evidence of guilt is 'so overwhelming and the error so insignificant by comparison that the error could not have affected the verdict,'" or, "even if the evidence of the defendant's guilt is not overwhelming, [ (2) ] if the evidence admitted in error was merely cumulative of other, undisputed evidence." *Ferguson v. Commonwealth,* 16 Va.App. 9, 12, 427 S.E.2d 442, 444–45 (1993) (quoting *Hooker v. Commonwealth,* 14 Va.App. 454, 458 n. 2, 418 S.E.2d 343, 345 n. 2 (1992)); *cf. Schneble v. Florida,* 405 U.S. 427, 430, 92 S.Ct. 1056, 1058–59, 31 L.Ed.2d 340 (1972) (holding, under Confrontation Clause, that error may be harmless where other evidence of guilt is overwhelming); *Cruz v. New York,* 481 U.S. 186, 194, 107 S.Ct. 1714, 1719, 95 L.Ed.2d 162

(1987) ("[T]he defendant's confession ... may be considered on appeal in assessing whether any Confrontation violation was harmless.").

Under these principles, the error in ordering joinder was harmless. The evidence other than Bonds' statement overwhelmingly proved that appellant attempted to rob the victim. " 'An attempt to commit a crime is composed of two elements: (1) The intent to commit it; and (2) a direct, ineffectual act done towards its commission.' " *Haywood v. Commonwealth,* 20 Va.App. 562, 565, 458 S.E.2d 606, 607–08 (1995) (quoting *Merritt v. Commonwealth,* 164 Va. 653, 657, 180 S.E. 395, 397 (1935)). Robbery "is defined as the 'taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation.' " *Jones v. Commonwealth,* 26 Va.App. 736, 738, 496 S.E.2d 668, 669 (1998) (quoting *Harris v. Commonwealth,* 3 Va.App. 519, 521, 351 S.E.2d 356, 356 (1986)).

Both the victim's and appellant's accounts of the incident proved appellant formed the intent to steal the contents of the victim's mouth and made a direct but ineffectual act toward this design. According to both, appellant approached the victim and the two had a discussion about illegal drugs. The victim testified that he had placed a twenty-dollar bill inside his mouth before the wrestling match with appellant. The victim testified and appellant stated in his confession that, after they started wrestling, appellant attempted to pry open the victim's mouth. The victim heard appellant say, "It is in his mouth." Appellant stated in his confession that he was attempting "to get cocaine" out of the victim's mouth.

Because the evidence of appellant's guilt was overwhelming, I would hold that the error in ordering the joint trial was harmless under state law.

## C.

### SIXTH AMENDMENT RIGHT TO CONFRONT WITNESSES

Next for determination is whether the trial court erred when it concluded that joinder, accompanied by the admission

of Bonds' out-of-court statement, would pose no serious risk to appellant's Sixth Amendment right to cross-examine the witnesses against him.

The Confrontation Clause of the Sixth Amendment, which applies to the States, provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI; *see Ohio v. Roberts*, 448 U.S. 56, 62–63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980) (citing *Pointer v. Texas*, 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965)). The right to confront witnesses secured by the Sixth Amendment encompasses the right to cross-examine them. *See Cruz*, 481 U.S. 186, 107 S.Ct. 1714; *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965). The right to confront and to cross-examine witnesses is a "functional right" that "advance[s] the pursuit of truth" and "promotes reliability" in criminal trials by "ensuring that convictions will not be based on the charges of unseen and unknown—and hence unchallengeable—individuals." *Lee v. Illinois*, 476 U.S. 530, 540, 106 S.Ct. 2056, 2062, 90 L.Ed.2d 514 (1986). Applying this Clause in the context of a joint trial of two or more criminal defendants, the United States Supreme Court has held as follows:

> [W]here a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant, *see Lee v. Illinois*, the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him.

*Cruz*, 481 U.S. at 193, 107 S.Ct. at 1719; *see also Bruton*, 391 U.S. at 135–36, 88 S.Ct. at 1627–28; *Douglas*, 380 U.S. at 419–20, 85 S.Ct. at 1077.

The record makes clear that the admission of Bonds' out-of-court statement violated appellant's Sixth Amendment right to cross-examine Bonds, *unless the statement was directly admissible against appellant.* Bonds' statement to Detective Thomson incriminated appellant. Bonds stated that appellant "smoke[s] a little rock" and approached the victim because "he

wanted a piece of [the victim's] rock [cocaine]." According to Bonds, appellant started wrestling with the victim when the victim was not forthcoming with the drug. Bonds stated that appellant attempted to pry open the victim's mouth and that his intent was to "take the rock" from the victim. Furthermore, the record indicates that Bonds asserted his Fifth Amendment right not to testify when he was called to the witness stand and thus was unavailable for cross-examination about his statement. *See Boney v. Commonwealth,* 16 Va. App. 638, 643, 432 S.E.2d 7, 10 (1993). Thus, despite the trial court's jury instruction limiting the use of Bonds' statement and the fact that appellant's own confession was admitted into evidence against him, the admission of the portions of Bonds' out-of-court statement incriminating appellant violated appellant's Sixth Amendment right of confrontation, unless Bonds' statement was otherwise directly admissible against appellant. *See Cruz,* 481 U.S. at 193, 107 S.Ct. at 1719.

Next for consideration is whether Bonds' out-of-court statements incriminating appellant were directly admissible against appellant. Under the standard set forth by the United States Supreme Court in *Lee,* 476 U.S. 530, 106 S.Ct. 2056, I hold that they were.

1.

*Admissibility of an accomplice's confession that incriminates a criminal defendant under the Sixth Amendment's Confrontation Clause*

Under the Confrontation Clause of the Sixth Amendment, a hearsay statement of an unavailable declarant is admissible "only if it bears adequate 'indicia of reliability.'" *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539. Generally, "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Id.* In other cases, the hearsay evidence must be excluded, unless "there is a showing of particularized guarantees of trustworthiness." *Id.*

Although a hearsay statement that is against the penal interest of the declarant is recognized as a "firmly rooted

exception" to the hearsay rule in Virginia,[8] *see Lilly,* 255 Va. at 575, 499 S.E.2d at 534; *Raia,* 23 Va.App. at 552, 478 S.E.2d at 331, the United States Supreme Court has expressly *refused* to analyze "a confession by an accomplice which incriminates a criminal defendant" as a declaration against penal interest for the purpose of determining the admissibility of such hearsay under the Confrontation Clause.[9] *Lee,* 476 U.S. at 544 n. 5, 106 S.Ct. at 2064 n. 5. In *Lee,* the Supreme Court stated that the category of "declarations against penal interest" is "too large a class for meaningful Confrontation Clause analysis" and held that "a confession by an accomplice which incriminates a criminal defendant" should be considered a distinct category of hearsay for the purpose of determining its admissibility under the Sixth Amendment.[10] *See id.*

---

**8.** *See supra* note 5.

**9.** *See infra* note 11.

**10.** As such, I reject the Commonwealth's argument that the admissibility of Bonds' out-of-court confession against appellant should be determined solely by assessing whether it is admissible under Virginia's "declaration against penal interest" exception to the rule against hearsay. In *Cruz,* when the United States Supreme Court set forth its test for determining the admissibility at a joint trial of a non-testifying codefendant's confession incriminating the defendant, it *expressly* cited *Lee* after the clause, "where a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant." *Cruz,* 481 U.S. at 193, 107 S.Ct. at 1719. From the placement of this citation to *Lee,* I conclude that the Supreme Court intended the question of whether this type of out-of-court statement is admissible *under the Confrontation Clause* should be determined according to the standards set forth in *Lee* rather than according to the state law test for "declarations against penal interest."

Therefore, an examination of whether the trial court's joinder of appellant's trial with Bonds' was reversible error requires two separate analyses—one regarding the admissibility of Bonds' statement under the statement against penal interest exception to Virginia's hearsay rule and a second, separate analysis under the Confrontation Clause. *See Idaho v. Wright,* 497 U.S. 805, 814, 110 S.Ct. 3139, 3146, 111 L.Ed.2d 638 (1990) (holding that Court has been careful "not to equate the Confrontation Clause's prohibitions with the general rule prohibiting the admission of hearsay statements"); *Lee,* 476 U.S. at 539, 106 S.Ct. at 2061 (noting that "admissibility of the evidence as a matter of state law" was not at issue in that case); *see also* Christine Noworyta, Comment, *Admitting Confessions of Codefendants: Has Lee v. Illinois*

Unlike hearsay statements that fall under firmly rooted hearsay exceptions, which presumably include statements against penal interest made in other contexts, accomplices' confessions that incriminate defendants are "presumptively unreliable" under the Sixth Amendment's Confrontation Clause. *Id.* at 541, 106 S.Ct. at 2062. In support of this holding, the Supreme Court reasoned:

> [The] truthfinding function of the Confrontation Clause is uniquely threatened when an accomplice's confession is sought to be introduced against a criminal defendant without the benefit of cross-examination.... "Due to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence."

*Id.* (citation omitted). Thus, "when one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is presumptively suspect and must be subjected to the scrutiny of cross-examination." *Id.*

The presumption of unreliability that attaches to accomplices' confessions that incriminate defendants may be rebutted. *See id.* at 543, 106 S.Ct. at 2063. A hearsay statement that falls into this category "may meet Confrontation Clause reliability standards if it is supported by a 'showing of particularized guarantees of trustworthiness.'" *Id.* When determining whether an accomplice's confession that incriminates a defendant is sufficiently reliable to be admissible without cross-examination, the Supreme Court has instructed courts to bear in mind that "the [Confrontation] Clause countenances only hearsay marked with such trustworthiness that 'there is no material departure from the reason of the general rule.'" *Id.* at 543–44, 106 S.Ct. at 2063 (quoting *Roberts*, 448 U.S. at 65, 100 S.Ct. at 2539).

---

*Created an Additional Hearsay Exception?*, 48 U. Miami L.Rev. 435, 444–45 (1993); Welsh S. White, *Accomplices' Confessions and the Confrontation Clause*, 4 Wm. & Mary Bill Rts. J. 753, 755 (1996).

Whether the portions of an accomplice's confession regarding a criminal defendant's participation in a crime are sufficiently trustworthy to be admissible without cross-examination under the Sixth Amendment is determined by considering (1) the circumstances surrounding the accomplice's confession and, in a case in which the defendant also made a confession, (2) the extent to which the accomplice's and the defendant's confessions "interlock." *See id.* at 544–46, 106 S.Ct. at 2064–65; *Cruz,* 481 U.S. at 193–94, 107 S.Ct. at 1719. Regarding the circumstances surrounding the confession, a court should consider the extent to which the accomplice was "free from any desire, motive, or impulse ... either to mitigate the appearance of his own culpability by spreading the blame [to the defendant] or to overstate [the defendant's] involvement in retaliation for her having implicated him in the [crime]." *Id.* at 544, 106 S.Ct. at 2064. Regarding the interlocking nature of the accomplice's and the defendant's confessions, a court should consider the extent to which those portions of the accomplice's confession *regarding the defendant's participation in the crime* are substantiated by the defendant's own confession. *See id.* at 545, 106 S.Ct. at 2064. When the discrepancies between the statements are "not insignificant," the accomplice's out-of-court confession is inadmissible under the Sixth Amendment. *Id.; see Cruz,* 481 U.S. at 192–93, 107 S.Ct. at 1718–19 (holding that tightly interlocking nature of confessions establishes reliability, for if codefendant's confession "confirms essentially the same facts as the defendant's own confession it is more likely to be true").

Two factors are *irrelevant* to the inquiry of whether an accomplice's confession that incriminates a defendant is admissible under the Sixth Amendment: (1) "whether the [accomplice's] confession was found to be voluntary for Fifth Amendment purposes," *see Lee,* 476 U.S. at 544, 106 S.Ct. at 2064 (stating that "such a finding does not bear on the [Sixth Amendment] question"), and (2) whether the other evidence at trial (except for the defendant's own confession) tends to corroborate the truth of the accomplice's statement, *see Idaho v. Wright,* 497 U.S. 805, 822–23, 110 S.Ct. 3139, 3150, 111

L.Ed.2d 638 (1990) (stating that such corroboration is "no substitute for cross-examination of the declarant at trial" and would "permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial"). Instead, as with all hearsay statements that are deemed admissible under the Confrontation Clause, the portion of the accomplice's confession incriminating the defendant "must possess indicia of reliability by virtue of its *inherent trustworthiness*" such that adversarial testing would add little to its reliability. *Id.* (emphasis added). "[T]he 'particularized guarantees of trustworthiness' required for admission under the Confrontation Clause must ... be drawn from the totality of the circumstances that surround the making of the statement and that render the declarant particularly worthy of belief." *Id.* at 820, 110 S.Ct. at 3149.

## 2.

### *Admissibility of Bonds' confession against appellant under the Confrontation Clause*

 Turning to the facts of this case, sufficient indicia of reliability flow from both the circumstances surrounding Bonds' confession and the interlocking character of Bonds' and appellant's confessions, and these circumstances are sufficient to overcome the Sixth Amendment's presumption against the admission of Bonds' uncross-examined statements.

First, the evidence regarding the circumstances surrounding Detective Thomson's interview of Bonds indicates that Bonds' statements were relatively free of any desire, motive, or impulse to overstate appellant's involvement in the incident with the victim. From the beginning of his encounter with the detective, Bonds indicated a willingness to cooperate by waiving his *Miranda* rights and answering all of the questions Detective Thomson posed. At no point did Bonds refuse to speak with the detective. Moreover, Bonds made these statements in a context that was free of any motive to retaliate against appellant for statements he made to the police implicating Bonds. The record indicates that, despite Detective

Thomson's knowledge of appellant's statement that Bonds helped appellant wrestle the victim to the ground, the detective never told Bonds that appellant had implicated him in the incident. Finally, neither the detective nor any other authority offered Bonds leniency in the prosecution against him in exchange for his testimony against appellant. Although Detective Thomson testified that he told Bonds he would speak to the Commonwealth's attorney and the magistrate, the detective did not testify what he told Bonds he would say on Bonds' behalf. The detective did testify that he later told the magistrate that Bonds had been "cooperative." The record does not establish what, if anything, the detective said to the Commonwealth's attorney regarding Bonds. Thus, the record does not indicate that, at the time of his confession, Bonds stood to gain substantively by inculpating appellant.

In addition, the portion of Bonds' confession regarding appellant's participation in the incident with the victim is thoroughly substantiated by appellant's own confession. *See Cruz*, 481 U.S. at 193–94, 107 S.Ct. at 1719 (stating that "the defendant's confession may be considered ... in assessing whether his codefendant's statements are supported by sufficient 'indicia of reliability' to be directly admissible against him" under the Confrontation Clause); *Lee*, 476 U.S. at 543–44, 106 S.Ct. at 2063–64 (same). Both appellant and Bonds told Detective Thomson that they were riding bicycles together when they came upon the victim. Both stated that appellant approached the victim in order to obtain cocaine from him. Although some collateral detail in Bonds' account is missing from appellant's version regarding the lapse of time between the initial encounter with the victim and the ensuing struggle, both Bonds and appellant stated that appellant started struggling with the victim in order to steal cocaine from the victim's person. Both Bonds and appellant stated that Bonds joined the fracas by helping appellant tackle the victim to the ground. Finally, both stated that appellant attempted to pry open the victim's mouth to steal "rock" cocaine appellant believed was concealed inside. In addition, statements Bonds made about other factual issues that appellant did not address

actually tended to *limit* appellant's liability for more serious criminal charges, such as robbery or attempted malicious wounding. Bonds stated that appellant did not succeed in taking any of the victim's property and that "there was no trying to hurt no one or nothing like that."

Because the circumstances surrounding Bonds' confession indicate they were free of all but a theoretical motive to incriminate appellant and because the portions of Bonds' and appellant's confessions regarding appellant's involvement in the crime were essentially identical in all material respects, the portions of Bonds' out-of-court confession regarding appellant's involvement were supported by sufficient, particularized guarantees of trustworthiness to permit their admission against appellant despite the fact that Bonds was unavailable for cross-examination. In this case, the portions of Bonds' confession incriminating appellant were "so trustworthy that cross-examination of the declarant would [have been] of marginal utility." *Wright,* 497 U.S. at 823, 110 S.Ct. at 3150.

### III.

### CONCLUSION

Based upon the foregoing analysis, I would hold as follows: Although the trial court erred in ordering the joint trial, that ruling and the trial court's subsequent ruling allowing Bonds' statement to be introduced at the joint trial were harmless error. In addition, the admission of this statement did not violate appellant's rights under the Confrontation Clause.[11]

---

11. The approach taken by the Virginia Supreme Court and this Court in prior cases involving a Sixth Amendment challenge to the admissibility of an accomplice's confession that incriminates a criminal defendant conflicts with the approach taken by the United States Supreme Court in *Lee. See Lilly,* 255 Va. at 574–75, 499 S.E.2d at 534; *Cooper v. Commonwealth,* 26 Va.App. 537, 543–44, 496 S.E.2d 77, 79–80 (1998); *Randolph,* 24 Va.App. at 351–57, 482 S.E.2d at 104–06; *Raia,* 23 Va.App. at 549–52, 478 S.E.2d at 330–31. In all of these cases, the Virginia Supreme Court and this Court held that the admissibility of an accomplice's confession against the defendant under the Confrontation Clause hinges upon whether the confession falls within Virginia's

Because Judge Lemons believes that Bonds' statement was admissible, we affirm.

*Affirmed.*

APPENDIX TO OPINION OF THE COURT

The following is a transcription of Bonds's taped statement, which was admitted into evidence as Commonwealth's exhibit 1:

DETECTIVE THOMSON: This is a recording of an interview conducted with Mr. Bonds from Detective S.A. Thomson. Today's date is 5/29/96. The time is 7:15 a.m. Detective Thomson read Mr. Bonds his *Miranda* rights at

"statement against penal interest" exception to the hearsay rule. *See Lilly*, 255 Va. at 574–75, 499 S.E.2d at 534; *Cooper*, 26 Va.App. at 543, 496 S.E.2d at 79–80; *Randolph*, 24 Va.App. at 352–57, 482 S.E.2d at 104–06; *Raia*, 23 Va.App. at 549–52, 478 S.E.2d at 330–31.

The differences between the United States Supreme Court's approach and Virginia's approach are potentially significant. Specifically, the factors that may be considered in assessing the "indicia of reliability" of an accomplice's hearsay confession under Virginia's approach are notably broader than those that may be considered under the United States Supreme Court's approach in *Lee* and *Wright*. Two factors the United States Supreme Court considers irrelevant to the inquiry of whether an accomplice's confession is admissible under the Sixth Amendment are routinely considered under Virginia's approach to the issue: (1) whether the other evidence at trial tends to corroborate the truth of the accomplice's statement, *see Wright*, 497 U.S. at 822–23, 110 S.Ct. at 3150, and (2) whether the accomplice's confession was voluntary, *see Lee*, 476 U.S. at 544, 106 S.Ct. at 2064. For examples of Virginia cases considering either of these two factors when assessing the reliability of an accomplice's confession under the "statement against penal interest exception," see *Lilly*, 255 Va. at 574, 499 S.E.2d at 534 (considering corroborating evidence); *Cooper*, 26 Va.App. at 543, 496 S.E.2d at 80 (considering corroborating evidence); *Randolph*, 24 Va.App. at 356, 482 S.E.2d at 106 (considering corroborating evidence); and *Raia*, 23 Va.App. at 551, 478 S.E.2d at 330 (considering corroborating evidence and voluntariness of confession).

However, applying Virginia's approach to the facts of this case would still result in affirmance of appellant's conviction. As discussed in the text, the trial court's erroneous admission of Bonds' hearsay confession against appellant as a statement against penal interest was harmless error under Virginia's hearsay rules and, therefore, would also constitute harmless error under the Confrontation Clause. Thus, the disposition of this case does not require resolution of the apparent conflict between *Lee* and the above-cited Virginia cases on this issue of Sixth Amendment jurisprudence.

approximately 05:55 hours on 5/29/96. Mr. Bonds under-
stood his *Miranda* rights and waived them. Right now,
he wished to make a statement. He did not wish to write
the statement out but did wish to have it recorded. Mr.
Bonds, is this true?

BONDS: Yes.

DETECTIVE THOMSON: Mr. Bonds, concerning an inci-
dent that happened today between Mr. Williams and Mr.
Pitt, you were riding your bike this morning with Mr. Pitt
at approximately 4:00 a.m. in front of the trailer park
located on 1152 Virginia (undecipherable) Boulevard in the
city of Virginia Beach, is this correct?

BONDS: Yes.

DETECTIVE THOMSON: Okay, can you tell exactly what
happened from that time on and how you got involved with
the situation this morning that brought you to the police
headquarters?

BONDS: Okay, me and Mr. Pitt was riding our bikes
around the trailer park. And, the victim came up, I guess
to buy some rocks, and Mr. Pitt wanted a piece of his rock,
and I guess he didn't give him a piece of the rock.

DETECTIVE THOMSON: Okay, you said "rock." Are
you referring to rock cocaine?

BONDS: Yes, rock cocaine. And, so, Mr. Pitt called me to
come on and ride down Virginia Beach Boulevard behind
the victim. So, we're riding behind the victim—I'm riding
behind the victim, Mr. Pitt's talking to the victim. And,
they were saying a few words, and the next thing you know
they got into a struggle. I tackled both of them. Knock
them both to the ground. And that when the officers came
up.

DETECTIVE THOMSON: What was the reason for knock-
ing Mr. Pitt and Mr. Williams to the ground?

BONDS: Um, Mr. Pitt was—the victim was getting the
best of Mr. Pitt on the wrestling, and, I bumped into them
to give Mr. Pitt an equal chance with the wrestling.

DETECTIVE THOMSON: Okay. Um, did you hear any-thing in reference to, um, taking any money or was this just strictly trying to take the rock from Mr. Williams?

BONDS: No, it was the rock.

DETECTIVE THOMSON: Alright. So, Mr. Pitt, that was his intention. Why did Mr. Pitt want his rock cocaine? Does Mr. Pitt have any problems?

BONDS: Uh, I'm not sure about his problem, but he smoke a little rock.

DETECTIVE THOMSON: Okay. Do you smoke any rock, sir?

BONDS: No, no, sir.

DETECTIVE THOMSON: Okay. Uh, is there anything else you can—as far as the victim, did you ever hit the victim or touch him in any other way or did you just wrestle with him?

BONDS: No, I just wrestled him down.

DETECTIVE THOMSON: Okay. How long did it take you to do that?

BONDS: Not long—like a football tackle.

DETECTIVE THOMSON: Okay. Did the victim—did you ever hear the victim yelling for help?

BONDS: Uh, he hollered. I think he did holler. Uh, by the time he hollered, the police was there, so I don't. . . .

DETECTIVE THOMSON: Okay. Uh, were you all riding down Virginia Beach Boulevard. You live at 1152 Virginia Beach Boulevard?

BONDS: Yes, sir.

DETECTIVE THOMSON: What was the reason for follow-ing the victim? Were y'all heading in that direction any-way? Or were you just—did Mr. Pitt want to follow the victim?

BONDS: We was heading that way anyway. But, uh, the victim had came up, I guess—I didn't know if Mr. Pitt knew this guy or what. So, they, they was, like, walking and riding, he was riding the bike and walking with him at the

same time. I was at the store by the time they crossed the street, by the gas station. I rode the bike and I caught up with them. I didn't catch all the way up with them. And, that's how I got here.

DETECTIVE THOMSON: Was there any injury to the victim? Was the victim hurt?

BONDS: No, no. There was no, there was no trying to hurt no one or nothing like that.

DETECTIVE THOMSON: Okay. Did you all take any property from the victim?

BONDS: Any property?

DETECTIVE THOMSON: Right.

BONDS: No.

DETECTIVE THOMSON: How about Mr. Pitt?

BONDS: No.

DETECTIVE THOMSON: Okay. So you all never got a hold of any property whatsoever?

BONDS: No.

DETECTIVE THOMSON: Who was trying to open the victim's mouth trying to get to the money?

BONDS: Mr. Pitt was trying to open his mouth up.

DETECTIVE THOMSON: Okay. What were you doing? Help holding the victim at the time?

BONDS: At that time, I was on the ground wrestling with both of them at that time.

DETECTIVE THOMSON: At that time period?

BONDS: Mmm-hmm.

DETECTIVE THOMSON: Okay. Uh, Mr. Bonds, as far as with me being a detective, uh, I've been fair with you ...

BONDS: Mmm-hmm.

DETECTIVE THOMSON: and I told you I'd talk to the Commonwealth's attorney in reference to this case. I'll also talk to the magistrate. As far as, (blank part)

* * * * * *

BONDS: ... in C building.

DETECTIVE THOMSON: Okay. And basically you are assistant to a brick mason?

BONDS: Right.

DETECTIVE THOMSON: Okay. Anything else you need to add or anything that can be helpful in this case?

BONDS: Um, that's all I can say.

DETECTIVE THOMSON: Okay. The officer's been real clear with you too?

BONDS: Yes.

DETECTIVE THOMSON: So, everybody's been fair, and this is the truth.

BONDS: Mmm-hmm. Everybody, everybody knows me from up there in the neighborhood—they know I'm, you know, I'm not a robber or anything like that.

DETECTIVE THOMSON: Okay. Alright. And, uh, we're gonna go ahead and cut the tape off at this time.

LEMONS, Judge, concurring.

I concur in the result reached in Judge Elder's opinion, but write separately because I believe Bonds' statement was directly admissible against Pitt as a statement against penal interest.

In order for a statement against penal interest to be admitted as an exception to the hearsay rule, the declarant must be unavailable to testify at trial, the statement must be against the declarant's interest at the time it was made, and the declarant must be aware at the time the statement is made that it is against his or her interest to make it. Additionally, such a statement is only admissible upon a showing that the declaration is reliable. *See Randolph v. Commonwealth*, 24 Va.App. 345, 355, 482 S.E.2d 101, 105–06 (1997).

Judge Elder states, "[u]nlike the statements in *Lilly, Chandler, Randolph* and *Raia*, Bonds' statements did not indicate that he was aware that his statement implicated him in appellant's attempt to rob the victim." Bonds did not have to know that his statement implicated him in an attempted robbery; he only had to know that his statement implicated

him in a crime. "It is important to remember that the interest of the declarant which is threatened by the declaration need not relate to the matters at issue in the case at trial. All that is required is that the declaration be against some pecuniary, proprietary, or penal interest of the declarant." 2 Charles E. Friend, *The Law of Evidence in Virginia* § 18–12 (4th ed. 1996). In this case, Bonds admitted he tackled the victim. While disclaiming any intent to participate in a robbery, Bonds, nonetheless, confessed to an assault. It is inconceivable that a competent adult would be unaware that, under these circumstances, tackling the victim was an assault and that assault was a crime. Bonds' statement acknowledged criminal liability. In disclaiming his intent to be a "robber," but still acknowledging that he assaulted the victim, Bonds merely attempted to differentiate the *type* of crime he committed.

"To be considered as being against the declarant's penal interest, it is not necessary that the statement be sufficient on its own to charge and convict the declarant of the crimes detailed therein. Rather, the statement's admissibility is based upon the subjective belief of the declarant that he is making admissions against his penal interest and upon other evidence tending to show that the statement is reliable." *Lilly v. Commonwealth,* 255 Va. 558, 573, 499 S.E.2d 522, 533, *cert. granted,* —— U.S. ——, 119 S.Ct. 443, —— L.Ed.2d —— (1998) (citations omitted). That the "statements were self-serving, in that they tended to shift principal responsibility to others or to offer claims of mitigating circumstances, goes to the weight the jury could assign to them and not to their admissibility." *Id.* at 574, 499 S.E.2d at 534. Judge Elder's opinion establishes the inherent reliability of the statement. Under Virginia law, Bonds' statement qualifies as an exception to the hearsay rule and was directly admissible against Pitt.

Pitt also maintains that the introduction of Bonds' statement violated his Sixth Amendment right of confrontation.

[W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is

admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness. *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). "[A]dmissibility into evidence of [a] statement against penal interest of an unavailable witness is a 'firmly rooted' exception to the hearsay rule in Virginia." *Lilly,* 255 Va. at 575, 499 S.E.2d at 534. But if the statement made against penal interest is made by a codefendant, it must be considered "presumptively unreliable." *Lee v. Illinois,* 476 U.S. 530, 545, 106 S.Ct. 2056, 2064, 90 L.Ed.2d 514 (1986). "[T]he arrest statements of a codefendant have traditionally been viewed with special suspicion. Due to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence." *Id.* at 541, 106 S.Ct. at 2062. The proponent of the statement may overcome this presumption by showing sufficient "indicia of reliability." *Id.* at 543, 106 S.Ct. at 2063. Judge Elder's opinion adequately recites the evidence in support of the trustworthiness of Bonds' statement.

Finally, the trial judge instructed the jury that Bonds' statement could be considered only against Bonds and not against Pitt. As stated above, the statement was directly admissible against Pitt; consequently, unlike the facts in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), no cautionary instruction was required.

Judge Elder's opinion maintains that Bonds' statement was inadmissible against Pitt and that the trial judge erred in ordering a joint trial. For the reasons stated above, I disagree; however, I concur with the judgment that if error occurred, it was harmless.

BENTON, Judge, concurring in part, and dissenting in part.

In *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), Bruton's codefendant's statement was

admitted in evidence solely against the codefendant and not as evidence against Bruton. *Id.* at 125, 88 S.Ct. at 1622. The United States Supreme Court "held [in *Bruton* ] that a defendant is deprived of his rights under the Confrontation Clause when his codefendant's incriminating confession is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant." *Cruz v. New York,* 481 U.S. 186, 187–88, 107 S.Ct. 1714, 1716, 95 L.Ed.2d 162 (1987).

The record is uncontroverted that Deshon Pitt and the codefendant, Lambert Bonds, were tried jointly and that the codefendant's statement implicating Pitt was proved at trial. The record is also uncontroverted that the codefendant's statement was admitted at trial against the codefendant but not against Pitt. The trial judge so ruled and, indeed, instructed the jury "that any statements made by ... [the codefendant] to the police are not evidence against ... Pitt and may not be considered by you in determining the guilt or innocence of ... Pitt." The Commonwealth did not object to the limiting instruction. Indeed, the Commonwealth informed the trial judge that "the jury needs to be instructed in that regard." Thus, Pitt's trial is indistinguishable on the adjudicatory facts from *Bruton.*

In *Cruz,* the defendant and the codefendant were tried together. The defendant's statement was admitted in evidence only against the defendant and the codefendant's statement, which implicated the defendant, was admitted in evidence only against the codefendant. 481 U.S. at 189, 107 S.Ct. at 1717. The Supreme Court held that the rule announced in "*Bruton* applies where the defendant's own confession, corroborating that of his codefendant, is introduced against him" in a joint trial. *Id.* at 188, 193, 107 S.Ct. at 1716, 1719. Thus, the Supreme Court unambiguously "h[e]ld that, where a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant, the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and

even if the defendant's own confession is admitted against him." *Id.* at 193, 107 S.Ct. at 1719.

The Confrontation Clause issue that arises in Pitt's case is substantially similar to the issue in *Cruz.* Applying *Cruz* to this case, we must necessarily conclude that a violation of Pitt's rights under the Confrontation Clause occurred. Furthermore, *Cruz* expressly bars, as a Confrontation Clause violation under the *Bruton* rule, introduction of a codefendant's confession, even if it "interlocks" with the defendant's confession. *Id.* at 191–93, 107 S.Ct. at 1718–19. Thus, by applying the holding in *Cruz,* which squarely mirrors the circumstances in this case, I would hold that the admission of the codefendant's statement deprived Pitt of his Sixth Amendment Confrontation Clause rights.

As an abstract proposition, I agree with several portions of Judge Elder's opinion. I concur in Part I; I agree with the analyses in Part II (Motion for joint trial under Code § 19.2–262.1) but not its conclusion that the admission of the codefendant's statement was harmless; I concur in Part II(A)(1); I concur substantially in Part II(A)(2) and in the conclusion that the codefendant's statement was hearsay; and I concur in Part II(A)(3). However, I am unable to give more than a qualified agreement because I believe the basic assumption that underlies Judge Elder's opinion is not applicable to this case. In my judgment, Judge Elder's opinion is incorrectly premised upon the view that the codefendant's statement was admissible as evidence against Pitt. It was not. Because it was not admitted in evidence at trial against Pitt, and, indeed, was not admissible against Pitt, the issue in this case is analogous to the issue in *Bruton* and *Cruz* and unlike the issue in *Lee v. Illinois,* 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986).

Because Judge Elder uses a *Lee* analysis rather than a *Bruton* analysis, and for the reasons that I have more fully explained above, I disagree with and dissent from Part II(B)

and all of Part II(C) of his opinion.[12] I would hold that Pitt's

___

12. As stated above, I agree with Judge Elder's opinion that the statement made by the codefendant was hearsay. It was not admissible against Pitt because the statement did not satisfy Virginia's requirements for a statement against penal interest. However, I strongly disagree with Judge Elder's view that, for Confrontation Clause purposes, the codefendant's statement *could have been* admitted against Pitt.

When a statement against the penal interest of a declarant is also inculpatory as to a defendant, it can only be admitted in evidence in the criminal trial of the defendant when, additionally, it is proved to be trustworthy. *See Ellison v. Commonwealth*, 219 Va. 404, 408, 247 S.E.2d 685, 688 (1978); *Randolph v. Commonwealth*, 24 Va.App. 345, 355, 482 S.E.2d 101, 106 (1997). *See also United States v. Rasmussen*, 790 F.2d 55, 56 (8th Cir.1986); *United States v. Boyce*, 849 F.2d 833, 836 (3d Cir.1988). In addition, when, as in this case, a statement does not fall within a firmly rooted exception to the hearsay rule, the Commonwealth bears the burden of establishing, for Confrontation Clause purposes, that the statement is cloaked with "indicia of reliability," which means that the Commonwealth must make "a showing of particularized guarantees of trustworthiness." *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980).

In *Lee v. Illinois*, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), a codefendant's statement was offered by the prosecution in a joint trial as evidence only against the codefendant. However, the record established that the trial judge, in fact, considered the statement as evidence against Lee when convicting Lee. *Id.* at 538, 106 S.Ct. at 2060–61. The Supreme Court, in determining admissibility under the Confrontation Clause, considered not only whether the statement fell within a "firmly rooted hearsay exception" but also "recognized that even if certain hearsay evidence does not fall within 'a firmly rooted hearsay exception' and is thus *presumptively unreliable and inadmissible for Confrontation Clause purposes, it may nonetheless meet Confrontation Clause reliability standards if it is supported by a 'showing of particularized guarantees of trustworthiness.'* " *Id.* at 543, 106 S.Ct. at 2063 (citing *Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539) (emphasis added).

In this case, there is no "showing of particularized guarantees of trustworthiness," *id.*, that would make the codefendant's statement admissible against Pitt under the second prong of the *Roberts* test. A very high standard must be met before a statement is deemed to be "trustworthy" under this second prong. In *Lee*, the Court stated that under the second prong, "the [Confrontation] Clause countenances only hearsay marked with such trustworthiness that 'there is no material departure from the reason of the general [hearsay] rule.' " *Id.* (citations omitted). *See also People v. Watkins*, 438 Mich. 627, 475 N.W.2d 727, 742 (1991) (analyzing *Lee*, the court reasoned that "because [the statement in question in *Lee* ] constituted accusatory hearsay contained in a codefendant confession, it was properly presumed at the outset to be *uniquely* and *especially* suspect and unreliable, much *more* so than

typical, run-of-the-mill hearsay" (emphasis in original)). Along similar lines, the Nebraska Supreme Court noted the following:

> Unlike other exceptions to the hearsay rule, statements made in response to police interrogation generally do not have inherent guarantees of reliability and trustworthiness. For example, the spontaneity of an excited utterance reduces the risk of inaccuracies because the statement is not the result of a declarant's conscious effort to make a statement. On the other hand, a statement made by a person subject to criminal liability, in which the declarant incriminates a third party, may be the result of the declarant's motivation and opportunity to curry favor with the authorities.

*State v. Hughes*, 244 Neb. 810, 510 N.W.2d 33, 38 (Neb.1993) (citations omitted). These and other cases strongly suggest that the statements made by the codefendant "suffer from the classic indicia of unreliability affecting virtually all custodial codefendant confessions." *Watkins*, 475 N.W.2d at 746.

In *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), a child victim's statement was admitted as evidence against Wright. *Id.* at 809–12, 110 S.Ct. at 3143–45. The Supreme Court stated that "[b]ecause evidence possessing 'particularized guarantees of trustworthiness' must be *at least* as reliable as evidence admitted under a firmly rooted hearsay exception, ... we think that evidence admitted under the former requirement must similarly be so trustworthy that adversarial testing would add little to its reliability." *Id.* at 821, 110 S.Ct. at 3149 (emphasis added). The Court gave an indication of what it considered *untrustworthy* by holding the statement under consideration in that case inadmissible because it was "not made under circumstances of reliability comparable to those required, for example, for the admission of excited utterances or statements made for purposes of medical diagnosis or treatment." *Id.* at 827, 110 S.Ct. at 3152.

Judge Elder correctly points out that one of the factors the United States Supreme Court held to be irrelevant in determining "trustworthiness" as a basis for admissibility under the Confrontation Clause was whether the other evidence at trial corroborates the truth of the declarant's statement. *See Wright*, 497 U.S. at 822–23, 110 S.Ct. at 3150–51. *See also Watkins*, 475 N.W.2d at 745 (noting that "the United States Supreme Court ... squarely prohibited reliance on corroborative evidence *of any kind* in assessing whether presumptively unreliable hearsay bears sufficient 'particularized guarantees of trustworthiness' for Confrontation Clause purposes." (emphasis added)); *Simmons v. State*, 333 Md. 547, 636 A.2d 463, 470 (1994) (noting that "the majority of the [Supreme] Court ... shot down its prior holdings that corroborating evidence could be used"). The Court in *Wright* summarized the issue as follows:

> In short, the use of corroborating evidence to support a hearsay statement's "particularized guarantees of trustworthiness" would permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial, a result we think at odds with the requirement that hearsay evidence admitted under the Confrontation Clause be so trustworthy that cross-examination of the declarant would be of marginal utility....

Moreover, although we considered in *Lee v. Illinois* the "interlocking" nature of a codefendant's and a defendant's confessions to determine whether the codefendant's confession was sufficiently trustworthy for confrontation purposes, we decline to rely on corroborative physical evidence and indeed rejected the "interlock" theory in that case.

497 U.S. at 823–24, 110 S.Ct. at 3150–51. The Court in *Wright* further observed that "[t]he Court [in *Cruz*] said nothing about whether the codefendant's confession would be admissible against the defendant simply because it may have 'interlocked' with the defendant's confession." *Wright*, 497 U.S. at 823 n. *, 110 S.Ct. at 3150, n. *.

In short, we must limit our review to the "totality of circumstances *that surround the making of the [codefendant's] statement*, and that render the [codefendant] particularly worthy of belief." *Id.* at 820, 110 S.Ct. at 3149 (emphasis added). The prosecution must provide an "affirmative reason, arising from the circumstances in which the statement was made [that] provides a basis for rebutting the presumption that a hearsay statement is not worthy of reliance at trial." *Id.* at 821, 110 S.Ct. at 3149–50.

In judging "trustworthiness" of the codefendant's statement, Judge Elder considers as a factor in this case "the extent to which the [codefendant's] and the defendant's confessions 'interlock.'" However, Pitt's statement was not recorded and was minimal in its content. The degree of interlock that can be discerned was not so substantial that the codefendant's statement can be deemed trustworthy by virtue of that circumstance. Significantly, in *Lee,* the Supreme Court expressly "reject[ed] Illinois' second basis for establishing reliability, namely, that because Lee's and [the codefendant's] confessions 'interlock' on some points, [the codefendant's] confession should be deemed trustworthy in its entirety." 476 U.S. at 545, 106 S.Ct. at 2064. The reliance on this corroborating evidence runs counter to the expressed rulings of the Supreme Court.

Judge Elder also relies upon the circumstances of the police interrogation in judging "trustworthiness." However, other courts generally consider as factors detracting from trustworthiness (1) whether the declarant was being questioned by the police, *Watkins*, 475 N.W.2d at 746 (observing that the statements were "'given in response to the questions of police, who . . . no doubt knew what they were looking for, and [they] w[ere] not tested in any manner by contemporaneous cross-examination by counsel. . . .'"), (2) "whether the declarant was in police custody when the statement was made," *Hughes*, 510 N.W.2d at 39, (3) "whether the declarant had a motive to mitigate his own criminal liability," *id.,* and (4) "whether the declarant made the statement in response to leading questions." *Id.* Additionally, when circumstances do not indicate that the declarant's statement "was not motivated by a desire to carry favor with the . . . police officer interrogating him" and further prove that the declarant was the beneficiary of favorable recommendations from the authorities, the evidence tends to suggest that the statement is not trustworthy. *See United States v. Boyce,* 849 F.2d 833, 836–37 (3rd Cir.1988). I believe these factors suggest that the codefendant's statement in this case should be deemed sufficiently untrustworthy as to be not admissible against Pitt.

rights under the Sixth Amendment's Confrontation Clause were violated. Furthermore, the constitutional error was not harmless.

Although "Confrontation Clause error[ ] is subject to ... harmless error analysis[,] ... the correct inquiry is whether, assuming that the damaging potential of the [evidence] were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986). The Supreme Court noted the following in *Cruz:*

> [I]t seems to us that "interlocking" bears a positively inverse relationship to devastation. A codefendant's confession will be relatively harmless if the incriminating story it tells is different from that which the defendant himself is alleged to have told, but enormously damaging if it confirms, in all essential respects, the defendant's alleged confession. It might be otherwise if the defendant were *standing by* his confession, in which case it could be said that the

---

According to the codefendant's statement in this case, a discussion between Pitt and the victim concerning a "rock" of cocaine escalated to a wrestling struggle. The codefendant did not "know if ... Pitt knew this guy or what." The codefendant denied "trying to hurt no one or nothing like that." The codefendant also said that when "the victim [began] getting the best of ... Pitt on the wrestling ... [, the codefendant] bumped into them to give ... Pitt an equal chance with the wrestling." Thus, while the codefendant implicates Pitt, he characterized his role in the incident as somewhat of a referee who intervened only to keep the victim from gaining a wrestling advantage over Pitt. Moreover, when the codefendant made this statement to the police, he did so knowing that the interrogating officer intended to inform the prosecutor and the magistrate that he, the codefendant, was fully cooperating with the police in their investigation. Nothing about the circumstances surrounding the making of the codefendant's statement tends to imbue it with an aura of trustworthiness.

Code § 19.2–262.1 permits codefendants to be tried jointly "unless such joint trial would constitute prejudice to a defendant." The codefendant's statement was inadmissible against Pitt and would have been barred had Pitt been tried by himself. The only way the codefendant's statement could properly have been admitted into evidence was in the codefendant's trial. Thus, Pitt properly contends that he was "prejudiced" by a joint trial because evidence incriminating him was admitted that would have been inadmissible had the trials been separated.

codefendant's confession does no more than support the defendant's very own case. But in the real world of criminal litigation, the defendant is seeking to *avoid* his confession—on the ground that it was not accurately reported, or that it was not really true when made. In the present case, for example, petitioner sought to establish that [the codefendant] had a motive for falsely reporting a confession that never in fact occurred. In such circumstances *a codefendant's confession that corroborates the defendant's confession significantly harms the defendant's case,* whereas one that is positively incompatible gives credence to the defendant's assertion that his own alleged confession was nonexistent or false. Quite obviously, what the "interlocking" nature of the codefendant's confession pertains to is not its *harmfulness.* . . .

481 U.S. at 192, 107 S.Ct. at 1718–19 (third emphasis added). Under these circumstances and if, as Judge Elder asserts, the statements were "interlocking," the error cannot be said to be harmless.

As the Court further noted in *Cruz,* the interlocking nature of the defendant's and the codefendant's confessions was devastating and prejudicial to the defendant in the eyes of the trier of fact for another significant reason. "[F]or example, the precise content and even the existence of [the defendant's] own confession were open to question, since they depended upon acceptance of [a witness'] testimony, whereas the incriminating confession of [the] codefendant . . . was on videotape." 481 U.S. at 192, 107 S.Ct. at 1718. These same circumstances hold sway in this case. The officer was testifying from notes and memory regarding Pitt's statement. However, the codefendant's confession was recorded and, thus, was presented to the jury without any of the ambiguities and uncertainties of testimony which is dependent upon a witness' memory. The recorded statement eliminated any uncertainty that the jury might have otherwise entertained. Clearly, under these circumstances we cannot say the error in admitting the codefendant's statements was harmless beyond a reasonable doubt.

For these reasons, I would reverse Pitt's conviction and remand for a new trial.